# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-01719-SCT

*EDWARD BAKER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/23/2000 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WALTER E. WOOD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | RICHARD D. MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/13/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/3/2002 |

**BEFORE SMITH, P.J., COBB AND DIAZ, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. On May 3, 1997, Edward Baker was indicted in the Madison County Circuit Court for the murder of his wife, Cinester Baker. A jury convicted Baker, and the trial court sentenced him to life imprisonment. Following the denial of his motion for JNOV or alternatively a new trial, Baker appeals raising two issues:

> **I. WHETHER THE ERRONEOUS ADMISSION OF A PREJUDICIAL VIDEOTAPE OF THE INSIDE OF BAKER'S APARTMENT SUBSEQUENT TO A WARRANTLESS SEARCH OF THE PREMISES CONSTITUTES REVERSIBLE ERROR.**
>
> **II. WHETHER THE GUILTY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

¶2. Finding these issues without merit, we now affirm.

## FACTS

¶3. On May 3, 1997, Edward Baker's children[1] awoke in the middle of the night to the sounds of Baker violently assaulting their mother, Cinester Baker. According to the eldest child, LaTonya, Cinester told her to run from Baker, but Baker got to the door before LaTonya could get out of the apartment. Cinester and

LaTonya, along with the other two children, Patrice and Lakesha, then ran into the children's bedroom where they tried to barricade themselves behind the door. As they were doing so, Baker retrieved a shotgun from its hiding place under a couch.

¶4. While Baker tried to break down the door, Cinester and the children tried to jump from the second-floor window to escape. LaTonya was knocked unconscious, apparently due to back injuries, and Patrice was temporarily stunned from falling on her stomach. Baker broke through the bedroom door, went to the window and fired the shotgun at Cinester. Baker then came downstairs, shot Cinester again, and forcibly dragged the injured LaTonya back up to the apartment before leaving the scene with her. Patrice was able to get away to a neighbor's apartment. These events were witnessed at least in part by several of Baker's neighbors including Latrina Travis, Jennifer Clay and Misty Tillis. Baker was soon captured by police, and LaTonya and Cinester were taken to the hospital where Cinester died of her injuries.

¶5. Madison County Deputy Sheriff James Gilmer was the first officer at the scene. In response to reports that one or more of the girls might still be in the apartment, Gilmer entered the apartment and did a brief visual inspection. A few hours later, while other officers were pursuing Baker, Perry Waggener, an investigator with the Sheriff's department, entered the apartment without a warrant and videotaped the interior and the view from the window out of which Baker opened fire. At trial, Baker sought to suppress the videotape as the fruit of an illegal search. The trial judge overruled his motion on the theory that the apartment was part of the crime scene and thus a warrant was not necessary.

## ANALYSIS

### I. WHETHER THE ERRONEOUS ADMISSION OF A PREJUDICIAL VIDEOTAPE OF THE INSIDE OF BAKER'S APARTMENT SUBSEQUENT TO A WARRANTLESS SEARCH OF THE PREMISES CONSTITUTES REVERSIBLE ERROR.

¶6. The Fourth Amendment of the U.S. Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

¶7. Constitutionally speaking, a search occurs when governmental action invades an area in which the person invoking the Fourth Amendment has an actual expectation of privacy which society would consider to be reasonable. *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516-17, 19 L.Ed.2d 576 (1967). When evidence is obtained in violation of the Fourth Amendment, a judicially-created exclusionary rule typically precludes use of the evidence in any criminal proceedings against one subjected to an illegal search and seizure. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). One exception to the exclusionary rule is the "exigent circumstances" exception which applies when three elements are met:

(1) there are reasonable grounds to believe that an emergency situation exists and that there is an immediate need for police assistance in order to protect life and property;

(2) the primary motivation for the search is not to make an arrest and/or to seize evidence; and

(3) there is some reasonable basis, approximating probable cause, to associate the emergency with the area or place searched.

*Smith v. State*, 419 So.2d 563, 570 (Miss. 1982).

¶8. Baker's first assignment of error is that the admission of videotape footage of the interior of his apartment violated his right to be free of unreasonable search and seizure as guaranteed by the Fourth Amendment. Baker concedes that Deputy Gilmer's initial search of the apartment was permissible as there were exigent circumstances necessitating the search in order to protect and preserve life. In other words, Baker does not challenge Gilmer's authority to search his home without a warrant as Gilmer had been told that two children were missing and they might have been in the apartment. Rather, Baker argues that Waggener's subsequent entry to videotape the scene to preserve evidence was too remote in time from Gilmer's and so the exigent circumstances exception does not apply.

¶9. At trial, the circuit court admitted the tape on the grounds that the apartment was part of the crime scene. The State concedes, and we agree, that there is no "crime scene" exception and that the circuit court appears to have applied the wrong legal standard. In fact, the U.S. Supreme Court expressly rejected the idea of a "murder scene" exception to the Fourth Amendment in *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). Since the trial court applied the wrong legal standard, we review its ruling de novo. *Butler v. State*, 592 So.2d 983, 986 (Miss. 1991)("[T]he trial court enjoys considerable discretion, and, so long as that court exercises that discretion by reference to the correct legal standards, we will not reverse absent substantial abuse of discretion").

¶10. In *Taylor v. State*, 733 So.2d 251 (Miss. 1999), police entered a dwelling in which a victim had been fatally burned by her boyfriend. *Id.* at 254. One officer walked through the house, left briefly to search for the boyfriend, and then returned with a camera to take pictures of the scene. *Id.* About 45 minutes later, police went through the house a third time, collecting various pieces of physical evidence. *Id.* We upheld the search's constitutionality, relying on the same reasoning applied earlier in *Smith*:

> From the time of their initial entry, the officers of the Jackson Police Department were engaged in only one search. That search had only one goal: locating [the victim] (and assisting her, if not too late). The actions of [the officer] and other members of the mobile crime lab (after the re-entry of the apartment) were merely to effectuate the physical seizure of articles in plain view which [the officers] would have been able to seize had not the circumstances been so "exigent". There was no unwarranted delay in time, nor was there any expansion of the scope of the search. The fact that the actual physical taking of the items into the custody of the police was effectuated by an evidence technician who was trained to preserve the evidentiary value of the objects, rather than by the first officers to view the objects, is not significant.

*Taylor*, 733 So.2d at 256 (quoting *Smith*, 419 So.2d at 572). In other words, when police are properly authorized to enter a dwelling under the exigent circumstances doctrine, they are also authorized to return and take physical evidence that was in plain view during the initial search, which they could have seized at the time but for the emergency situation that allowed them to enter the dwelling in the first place.

¶11. In the case sub judice, no physical evidence was taken at all. The officer who videotaped the scene testified that he did not "in any way tamper with anything in the apartment once [he] proceeded inside to videotape it." Instead, the videotape simply allowed the jury to see exactly what the police saw during their

initial search of the premises. This issue is without merit.

## II. WHETHER THE GUILTY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶12. During post-trial motions, Baker argued that he was entitled to a JNOV as the verdict was against the overwhelming weight of the evidence. Reiterating this argument on appeal, Baker conflates our standard for reviewing a motion for JNOV with our standard for reviewing whether a judgment is against the overwhelming weight of the evidence.

¶13. With regard to a motion for JNOV in a criminal trial, we have said:

> This Court's standards of review regarding a denial of a judgment notwithstanding the verdict and a peremptory instruction are the same. Our standards of review for a denial of a judgment notwithstanding the verdict and a directed verdict are also identical. Under this standard, this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. The above standards of review, however, are predicated on the fact that the trial judge applied the correct law.

*Coleman v. State*, 697 So.2d 777, 787 (Miss. 1997).

¶14. In contrast, our standard of review for claims that a judgment is against the overwhelming weight of the evidence is as follows:

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.

*Dudley v. State*, 719 So.2d 180, 182 (Miss. 1998)(internal citations omitted).

¶15. In this assignment of error, Baker's "evidence" consists merely of three factual disputes in the testimony of various prosecution witnesses. First, each of his two children testified that Baker struck Cinester with a different object, either an iron or an iron pipe, while the medical examiner said that she suffered no injuries other than gunshot wounds. Second, prosecution witness Latrina Davis said that Baker fired his last shots from only two feet away from Cinester, but the medical examiner said that all the shots were fired from at least 20 feet away. Third, Latrina Davis, Jennifer Clay and Misty Tillis all testified that they saw part of the shooting, even though it was 4 o'clock in the morning and the police officer videotaping the scene remarked that it was dark and difficult to see.

¶16. Viewing all the evidence in the light most favorable to the State, however, we find that the facts so

considered point so overwhelmingly in favor of Baker's guilt that reasonable jurors could not have arrived at a contrary verdict. Two of Baker's three children and three of his neighbors testified against him as eyewitnesses to all or part of the crime, and the arresting officer testified to finding the murder weapon in Baker's car. Against this evidence, Baker offers only the conclusory statement that the video was "prejudicial" but no-explanation of why merely showing the interior of the apartment is reversible error. The part-of the video showing the apartment is less than four minutes long. Admittedly, there are some signs of a struggle (most notably a lamp that had been knocked to the floor), and the-tape does show the door to the children's room broken down. However, we perceive nothing on the tape which is so prejudicial that it outweighs the sufficiency of the other evidence offered against Baker. We further conclude that the verdict is not "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Thus, regardless of whether Baker is actually arguing for a JNOV or a new trial, and regardless of which standard of review this Court employs, this issue is without merit.

## CONCLUSION

¶17. Based on the foregoing analysis, we conclude that none of Baker's assignments of error have merit, and we affirm the judgment of the Madison County Circuit Court.

¶18. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**

1. At the time of the shooting, LaTonya (who also goes by the name Shell) was 12 years old, Patrice (who also goes by Shun) was 11, and the youngest child LaKesha (who goes by Kesha) was 10.