# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2000-KA-02051-COA

**GARY MCCLENDON AND GLORIA HENRY MCCLENDON**     **APPELLANTS**

**v.**

**STATE OF MISSISSIPPI**                                            **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 11/16/2000 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | SHARON HENDERSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | NATHANIEL ARMISTAD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | GARY MCCLENDON, COUNT 1, GRAND LARCENY, COUNT 2, CONSPIRACY. SENTENCED TO SERVE FIVE YEARS ON EACH COUNT, WITHOUT THE BENEFIT OF PAROLE, IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS; SAID SENTENCES TO RUN CONSECUTIVELY TO EACH OTHER AND TO ANY OTHER SENTENCE IMPOSED. 11/27/200: GLORIA MCCLENDON: COUNT 1, GRAND LARCENY, COUNT 2, CONSPIRACY. SENTENCED TO SERVE FIVE YEARS ON EACH COUNT IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH PLACEMENT IN THE INTENSIVE SUPERVISION PROGRAM/HOUSE ARREST PROGRAM; SAID SENTENCES TO RUN CONCURRENTLY. DEFENDANT IS ORDERED TO PAY BEFORE 12/1/2000, COURT COSTS IN THE AMOUNT OF $246 AND A BOND FEE IN THE AMOUNT OF $100 AND A FINE IN THE AMOUNT OF $2,500, PAYABLE IN MONTHLY INSTALLMENTS OF $100 EACH. |
| DISPOSITION: | AFFIRMED AS TO GARY MCCLENDON AND REVERSED AND RENDERED AS TO GLORIA MCCLENDON-08/06/2002 |
| MOTION FOR REHEARING FILED: | 8/16/2002 |
| CERTIORARI FILED: | |

MANDATE ISSUED:

BEFORE SOUTHWICK, P.J., THOMAS, AND IRVING, JJ.

IRVING, J., FOR THE COURT:

¶1. Gary and Gloria McClendon appeal from a judgment of conviction rendered in the Circuit Court of Copiah County, Mississippi, pursuant to a jury verdict which found them guilty of grand larceny and conspiracy to commit grand larceny. In this appeal, the McClendons raise one issue which is whether the verdict is against the overwhelming weight of the evidence.[1] We find that the evidence is sufficient to support Mr. McClendon's conviction of both offenses. However, do not find the evidence sufficient to support Mrs. McClendon's convictions; consequently, we reverse and render both of her convictions. We do find the evidence sufficient to support a charge against Mrs. McClendon of accessory after the fact of grand larceny, but she was not charged with this offense, and it is not a lesser-included offense of the charged offense.

**FACTS**

¶2. On July 5, 2000, Danny Berry, owner of a Chevrolet dealership in Crystal Springs, Mississippi, observed one of his salespersons and two males walking across the highway from his car repair department to the lot where the new vehicles were located. The men left but came back later and looked at a red Tahoe. After they left this second time, Berry sent one of his lot employees to check the red Tahoe that the men had looked at. Upon checking the vehicle, the employee found that the keys bearing a tag marked with the Tahoe's stock number did not start or open the Tahoe. Berry concluded that the keys had been taken and called the police department.

¶3. Officer Gerome Leflore of the Crystal Springs Police Department responded to the call. Berry and his employees explained that the last people they could remember looking at the Tahoe were two men driving a red or maroon Mercedes. Also, they told the officer that one of the men walked with a limp. The employees explained that the two men had come to get the Mercedes repaired but decided against it. As a result of this initial repair request, the employees had taken the tag number of the Mercedes. The tag number was given to Officer Leflore.

¶4. During the officer's discussions with the employees and Berry, they deduced that the two men had taken the keys which fit the red Tahoe and may return that night to steal it. Therefore, Officer Leflore decided to come back later that night and watch the car lot for any potential thieves. In the meantime, Officer Leflore and Officer Chris Palmer, the lead investigator, ran the car tag number for a registered address and determined that the Mercedes was registered at 3907 Bailey Avenue to Gloria McClendon in Jackson, Mississippi.

¶5. Officer Leflore returned to the Chevrolet car lot that night but left around 7:30 or 8:00 p.m. That same night, one of Berry's employees came back to the car lot in order to complete some paperwork and upon leaving realized that the Tahoe was missing. The police department was notified.

¶6. After the police department received the call, Officer Palmer began searching for the Tahoe by going to the address to which the Mercedes was registered, but the Tahoe was not there. Because Officer Palmer was unable to find the Tahoe in Jackson, he alerted other officers to begin looking for the Tahoe and the

Mercedes in Crystal Springs. En route back to Crystal Springs from Jackson, he received a call from an Officer Barnes[2] who had stopped a red Mercedes, with two males in it, at a gas station in Crystal Springs. The tag number of the Mercedes matched the tag number of the Mercedes registered to Gloria McClendon.

¶7. Officer Palmer went to the location. When he arrived, he discovered that one of the men in the Mercedes walked with a limp. This individual was identified as Gary McClendon, and the other male was identified as Leon McDavid.[3] The officers conducted a pat down of the two men and found an assortment of car keys in their pockets. As a result of this pat down, McClendon and McDavid were arrested. Officer Palmer retained possession of the keys and took McClendon's cell phone. Thereafter, Palmer took the keys to Berry's Chevrolet dealership to see if any of the keys fit any of the vehicles at the dealership. One of the keys opened the door to a Tahoe but would not fit the ignition switch.

¶8. Shortly after leaving Berry's dealership, the cell phone, which Officer Palmer had taken from McClendon, rang. Officer Palmer, pretending to be McClendon, answered the phone. A male voice asked Officer Palmer about picking up a vehicle. Officer Palmer arranged to meet the unidentified male in Jackson. When the meeting occurred, Officer Palmer explained to the unidentified male that the man he called on the cell phone was in police custody. Officer Palmer solicited the cooperation of the unidentified male, and he, the unidentified male, and Officer Leflore went back to Crystal Springs. When the officers returned to the police station, McClendon was given his cell phone. Unbeknownst to McClendon, the officers had the unidentified male call McClendon and ask about picking up a vehicle. After the unidentified male spoke with McClendon, he and the officers went to Jackson to meet Gloria McClendon who, in the interim, received a telephone call from Mr. McClendon.

¶9. Upon arriving at the McClendons's residence, they informed Mrs. McClendon that they were there to pick up a vehicle. Mrs. McClendon said that her husband had called and said that they would be coming by; then she got in the vehicle with them and directed them to another residence, later identified as McDavid's residence, and picked up a box of keys. Thereafter, Mrs. McClendon directed them to the Mississippi Baptist Hospital parking garage. While Officer Palmer was driving through the garage, he noticed a red Tahoe. As a result of seeing this Tahoe, Officer Palmer concocted a reason to leave the garage by telling Mrs. McClendon that the security guard was following them. Officer Palmer told Mrs. McClendon that they would take her home and come back later. The officers and the young man took Mrs. McClendon home and went back to the hospital garage and, using one of the keys from the box of keys obtained from McDavid's residence, cranked the red Tahoe.

### ANALYSIS AND DISCUSSION OF THE ISSUE

### 1. Sufficiency of the evidence

¶10. The McClendons argue that the evidence was insufficient to support the verdict. For this reason, they assert that their motion for a directed verdict, judgment notwithstanding the verdict or alternatively a new trial should have been granted by the trial court. The McClendons assert that the State failed to meet its burden of proving its case. They list specific examples of the State's failure to carry its minimum burden for establishing guilt.

¶11. The standard of review is the same when assessing a judgment notwithstanding the verdict and a directed verdict. *Baker v. State*, 802 So. 2d 77, 81 (¶13) (Miss. 1995). This standard requires us to

consider the evidence in the light most favorable to the appellee, giving the appellee the benefit of all favorable inferences which may be reasonably drawn from the evidence. *Id.* We are required to reverse and render where the facts point overwhelmingly in favor of the appellant that reasonable men could not have found appellant guilty. *Id.* However, we are required to affirm where substantial evidence of such quality and weight exists to support the verdict and where reasonable and fair minded jurors may have found appellant guilty. *Id.*

¶12. Although the McClendons list examples of evidence favorable to them, for purposes of considering the appropriateness of the trial judge's denial of the McClendons's motion, we, must consider all evidence favorable to the State. Consequently, we must exclude the evidence favorable to the McClendons as the jury was entitled, in its discretion, to reject whatever evidence it deemed appropriate. The State's evidence was presented through the testimony of Officer Chris Palmer, Officer Gerome Leflore, and Danny Berry, while neither of the McClendons testified. Danny Berry's testimony set the stage because he explained how the Tahoe became missing. Also, he testified that the last men seen looking at the red Tahoe before it was reported stolen had initially requested repairs to a maroon or red Mercedes. Berry explained that his employees in the repair department had taken the car tag number of the Mercedes for the purpose of repair but gave the number to the police when the keys to the red Tahoe were discovered missing. Officer Leflore confirmed Berry's story and explained that he responded to the Chevrolet dealership when the keys were initially discovered missing. In addition, he positively identified Gary and Gloria McClendon at trial.

¶13. Lastly, Officer Palmer's testimony tied all loose ends. He testified that the address of the Mercedes was registered to Gloria McClendon. He explained that the Chevrolet employees reported to him that one of the men driving the maroon or red Mercedes walked with a limp and that Mr. McClendon walked with a limp. In addition, he testified that the tag numbers of the Mercedes stopped by Officer Barnes matched the tag numbers of the Mercedes which was driven to Berry's Chevrolet dealership for repair. More importantly, Officer Palmer testified that he had answered Mr. McClendon's phone when it was in Palmer's car. He explained that, as a result of the phone call, he met the unidentified male from Gulfport who arranged with Mr. McClendon to pick up a truck. To effectuate the deal, Mr. McClendon directed the parties to his wife who obtained a box of keys from McDavid's residence, one of which keys fit the red Tahoe which was stolen from Berry's dealership.

¶14. Given this evidence, reasonable jurors could have concluded that Mr. McClendon conspired with McDavid to commit grand larceny. The evidence is also sufficient to support the conclusion that Mr. McClendon was one of the two men who visited Berry's dealership and that he later participated in the theft of the red Tahoe from Berry's dealership. However, as previously observed, we do not find the evidence sufficient to support the jury's determination that Mrs. McClendon participated in a conspiracy to commit grand larceny or the actual theft of the red Tahoe. It certainly appears that she may have been an accessory after the fact, but as we have already observed, she was not charged with being an accessory. Therefore, we hold that the trial judge erred in not granting Mrs. McClendon's motion for a directed verdict.

¶15. The dissent argues that we err in finding that Mrs. McClendon's motion for a directed verdict should have been sustained. In the dissent's view, the fact that Mrs. McClendon's car was used, along with the fact that she knew exactly where to go to get the keys to the stolen Tahoe and was able to lead Officer Palmer to the Tahoe's location, proves that she was an accessory before the fact. What this argument fails to recognize is that the State presented only a circumstantial evidence case. In such a case, the State's evidence must exclude every hypothesis consistent with innocence. *Deloach v. State*, 658 So. 2d 875,

876 (Miss. 1995) (quoting *Murphy v. State*, 566 So.2d 1201, 1204 (Miss. 1990)). As we will discuss in the paragraphs that follow, a reasonable hypothesis consistent with Mrs. McClendon's innocence is that she learned of her husband's theft of the Tahoe after it had occurred.

¶16. It is entirely plausible that Mrs. McClendon simply followed instructions which had been given to her by her husband during the telephone conversation. The mere fact that Mr. McClendon had his wife's car when he came to Berry's dealership does not prove, as to Mrs. McClendon, any prior scienter of the plan to steal the Tahoe or participation in the theft. There is nothing criminal or unusual about a husband using his wife's car. There is no proof that Mrs. McClendon knew anything about the Red Tahoe, including the fact that it was parked in the hospital parking lot. After all, Officer Palmer made it clear during cross-examination that Mrs. McClendon did not mention or point out the Tahoe to him.

¶17. Likewise, the fact that Mrs. McClendon retrieved a box of keys from McDavid's home and directed Officer Palmer to the location where the Tahoe was found does not, in light of the intervening telephone call from her husband, prove prior participation in a conspiracy to steal the Tahoe or the theft of the Tahoe. While we do not know the contents of the telephone conversation, we can at least deduce that Mr. McClendon instructed Mrs. McClendon to go to McDavid's residence, to get a box of car keys and to direct the unidentified male and Officer Palmer to the Baptist Hospital parking garage. We know this much because when the unidentified male told Mr. McClendon that he had come to pick up the vehicle, Mr. McClendon told the unidentified male that McClendon would get McClendon's wife to get the keys for them because he had run into some problems.[4] However, this does not prove that Mrs. McClendon possessed any prior knowledge of Mr. McClendon's plans or that she had participated in the planning of or the actual theft of the Tahoe. Again, as already observed, there is nothing criminal or unusual about a wife following her husband's instructions.

¶18. On these facts, we cannot say that the State's proof against Mrs. McClendon excluded every reasonable hypothesis consistent with her innocence because a reasonable hypothesis consistent with her innocence is that she learned of the theft of the Tahoe after it had occurred. Any conclusion to the contrary is necessarily based on utter speculation and conjecture as to what might have been said or discussed, if anything, between Mr. and Mrs. McClendon prior to his trip to Berry's Chevrolet.

### 2. Weight of the evidence

¶19. A motion for a new trial recognizes some evidence in support of the verdict but seeks a new trial on the basis that the weight of the evidence is against the verdict. A motion for a new trial implicates the discretion of the trial judge. This Court will reverse a denial of a motion for a new trial only when the denial amounts to an abuse of discretion. *Baker*, 802 So. 2d at 81 (¶14). Because we find that sufficient evidence exists to support the verdict against Mr. McClendon, we also find that the judge did not abuse his discretion in denying Mr. McClendon's motion for a new trial.

¶20. **THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY AS TO APPELLANT, GARY MCCLENDON, OF CONVICTION AS A HABITUAL OFFENDER OF COUNT I, GRAND LARCENY, AND COUNT II, CONSPIRACY TO COMMIT GRAND LARCENY, AND SENTENCE OF FIVE YEARS ON EACH COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SAID SENTENCES TO RUN CONSECUTIVELY TO EACH OTHER AND TO ANY OTHER SENTENCE IMPOSED IS AFFIRMED, AND THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY AS**

**TO GLORIA MCCLENDON IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, AND CHANDLER, JJ., CONCUR. LEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, MYERS AND BRANTLEY, JJ..**

LEE, J., CONCURRING IN PART, DISSENTING IN PART:

¶21. While I concur with the majority's affirmance of Gary McClendon's convictions on both counts, I disagree with the finding of reversal with regard to Gloria McClendon's convictions. The record is clearly sufficient to support the jury's finding concerning Mrs. McClendon's guilt on both charges of grand larceny and conspiracy, and I would affirm her conviction.

¶22. As pointed out by the majority, the Mercedes automobile used in the commission of this felony was titled in Mrs. McClendon's name, providing information for Officer Palmer to go to her home. At the trial, Officer Palmer testified that he went undercover to Mrs. McClendon's home and told her he was there to pick up some vehicles, and in response, she took him to McDavid's house where she retrieved a box of keys. Thereafter, they went to the parking garage at Baptist hospital where they drove around until a guard started following them, which prompted Officer Palmer to suggest they leave and come back later. Officer Palmer testified that he saw the missing red Tahoe from Danny Berry Chevrolet in the garage, and that one of the keys he had retrieved from Gary McClendon did actually start this Tahoe.

¶23. The question surfaces then, how could Gloria McClendon be ignorant of her husband's scheme if her car was used in the initial act, she knew exactly where to go to get the keys to this vehicle and she was able to lead Officer Palmer to the exact location where the vehicle was parked? I am quite convinced, as was the jury by virtue of their verdict, that Mrs. McClendon was privy to the acts of her husband in stealing the vehicle, and that she had some arrangement with him to take the would-be buyer to the vehicle to pick up.

> We will vacate a jury verdict only if the verdict is "so contrary to the overwhelming weight of the evidence that, to allow it to stand would be to sanction an unconscionable injustice." In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.

*Richmond v. State*, 751 So. 2d 1038 (¶34) (Miss. 1999) (citation omitted). I believe the majority has failed to review the evidence in a light favorable to the State, thus resulting in their improper decision to reverse Mrs. McClendon's convictions. "'[T]he jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict.' On appeal, this Court 'is not to sit as jurors and retry the case.'" *Newell v. State*, 754 So. 2d 1261 (¶9) (Miss. Ct. App. 1999). As stated, we cannot usurp the jurors' responsibility to weigh the evidence; rather, we merely review the evidence in a light favorable to the verdict to determine if the jurors' decision would sanction an unconscionable injustice were it permitted to stand. The facts here support the jurors' finding that Mrs. McClendon was privy to the theft plan; otherwise, she could never have taken Officer Palmer to the other house to locate the box of keys which led to the trip to the hospital parking garage where the Tahoe was found. To look the other way and find that all of this was mere coincidence is to go beyond our authority.

¶24. The majority says, at most, Mrs. McClendon could have been guilty of accessory after the fact; however, since she was not indicted for that offense and since it was not a lesser-included offense of the crimes for which she was indicted, we should chalk this up to the prosecutor's error. I disagree. Looking to the definitions of both accessory before and after the fact, I find no question that Mrs. McClendon was guilty as an accessory before the fact, as well as a conspirator with her husband:

> The elements of accessory after the fact are that (1) a completed felony has been committed; (2) the accused concealed, received, relieved, aided, or assisted a felon, knowing that such person had committed a felony; and (3) such assistance or aid was rendered with the intent to enable such felon to escape or avoid arrest, trial, conviction, or punishment after the commission of such felony. One of the critical distinctions between being an accessory before and after the fact is whether the felony is complete at the time assistance is rendered. *One is an accessory before the fact when assistance is rendered the principal before the felony is completed in order to help said principal in commission or completion of the offense . . . .* An accessory before the fact necessarily "participates in the design of the felony." In contradistinction, an accessory after the fact is a person assisting one who has completed the commission of a felony to avoid being apprehended, arrested, convicted, etc.

*Gangl v. State*, 539 So. 2d 132, 136 (Miss. 1989) (emphasis added). "Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have [sic] been previously convicted or not." Miss. Code Ann. § 97-1-3 (Rev. 2000). But for Mrs. McClendon's acts, the would-be buyer would not have located the vehicle that Gary stole; thus, Mrs. McClendon was aware of the plan from the beginning and helped her husband, the principal, as an accessory before the fact to participate in the design of the felony.

¶25. Concerning conspiracy, although no direct evidence was presented that Mrs. McClendon had entered into an agreement with her husband to commit the larceny, the circumstantial evidence indicates otherwise. "Conspiracy agreements need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts and conduct of the alleged conspirators." *Echols v. State*, 759 So. 2d 495 (¶16) (Miss. Ct. App. 2000).

¶26. The majority claims that the State's evidence presented only a circumstantial case. We recognize that in such cases, "the jury, to convict, must believe the defendant guilty beyond all reasonable doubt and to the exclusion of every reasonable hypothesis other than that of guilt. The reviewing court will not disturb a circumstantial evidence conviction unless it is opposed by a decided preponderance of evidence." *Sudduth v. State*, 562 So. 2d 67, 71-72 (Miss. 1990). As stated, the jury was to exclude reasonable hypotheses other than guilt, and it is not this Court's prerogative to concoct possible scenarios not presented at trial to explain Mrs. McClendon's behavior, which I believe the majority has done. The majority claims it is "entirely plausible" that Mrs. McClendon learned of the scheme after the fact. Again, we are not to weigh what might have been plausible, but are to merely review the evidence the jury had before it to determine if a preponderance of the evidence supported the verdict.

¶27. We finally note that Mrs. McClendon declined to testify in her own defense.

> While it is the right and privilege of a defendant to refrain from taking the witness stand, and no presumption is to be indulged against him for exercising that right, still the testimony of the witnesses

against him may be given full effect by the jury, and the jury is likely to do so where it is undisputed and the defendant has refused to explain or deny the accusations against him.

*McGilvery v. State*, 497 So. 2d 67, 68 (Miss. 1986).

¶28. The majority goes to great lengths to find reasons for Mrs. McClendon's non-participation. Nonetheless, the evidence viewed favorably to the verdict was substantial and overwhelming that she did actively participate, and the jury viewed this evidence and reasonably found her guilty. It is not within the province of this Court to overturn the jury's verdict, and I would affirm Mrs. McClendon's conviction.

**BRIDGES, MYERS, AND BRANTLEY, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**

1. Although the McClendons frame the issue as the verdict being against the weight of the evidence, they actually argue both the weight and sufficiency of the evidence.

2. Officer Barnes's full name was not given during trial and he did not testify.

3. Mr. McDavid was also indicted for conspiracy to commit grand larceny and theft. However, his case is not a part of this appeal.

4. Officer Palmer testified to this fact during the hearing on the motion to suppress.