856 So.2d 650 (2003)
Antonio Terrell ANDERSON a/k/a Crazy Horse, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01863-COA.
Court of Appeals of Mississippi.
June 24, 2003.
Rehearing Denied September 23, 2003.
*651 William B. Lovett, James Lawton Robertson, Jackson, attorneys for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before LEE, P.J., MYERS and GRIFFIS, JJ.
MYERS, J., for the court.
¶ 1. Antonio Anderson was tried for manslaughter and three counts of aggravated assault on July 2, 2001. A jury returned a guilty verdict on all counts. The Circuit Court of Jefferson County then sentenced Anderson to sixteen years for one count of manslaughter and three consecutive eight-year sentences for the counts of aggravated assault. Aggrieved by the verdict, Anderson asserts the following issues on appeal:
I. WAS THE IDENTIFICATION OF ANDERSON AS THE SHOOTER IN THIS CASE SUPPORTED BY EITHER THE SUFFICIENCY OR THE WEIGHT OF THE EVIDENCE?
II. DID THE TRIAL COURT ERR IN ADMITTING CRIME SCENE PHOTOGRAPHS?
III. DID ANDERSON SUFFER PREJUDICE WHEN HE WAS REFERRED TO AS "CRAZY HORSE"?
IV. DID THE CUMULATIVE ERRORS DENY ANDERSON A FAIR TRIAL?
V. WAS ANDERSON'S VERDICT THE RESULT OF BIAS, PASSION, AND PREJUDICE ON THE PART OF THE JURY?

Facts
¶ 2. Antonio Anderson arrived at the In and Out Club, just outside Fayette, Mississippi, in the early morning hours of August 13, 2000. In the back of the club was a small pool room. This room was packed with people watching, playing, and betting on games of pool. At one of the tables, Terrence Kelly and Bevie Bingham were playing a heated game.
¶ 3. During the course of this game, some confusion arose, and Christopher Barnes, one of the persons betting on the game, called off his bet. He retrieved his money, and walked past Anderson. Anderson shoved Barnes. Barnes then punched Anderson in the face, knocking Anderson to the floor. At this point, according to several witnesses, Anderson reached into his pants and withdrew a gun. Many of the spectators, upon seeing the weapon, panicked and began to flee. Shots were heard. Jamaal Odom was shot in the head, resulting in his death, and three people suffered less severe gunshot wounds while they were fleeing.
¶ 4. Anderson was later arrested for the manslaughter of Odom and the aggravated assault of the three other shooting victims.

Legal Analysis

I. WAS THE IDENTIFICATION OF ANDERSON AS THE SHOOTER IN THIS CASE SUPPORTED BY EITHER *652 THE SUFFICIENCY OR THE WEIGHT OF THE EVIDENCE?

V. WAS ANDERSON'S VERDICT THE RESULT OF BIAS, PASSION, AND PREJUDICE ON THE PART OF THE JURY?
¶ 5. The appellant has a high burden to overcome when challenging the sufficiency of the evidence. This standard has been stated as:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the defendant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Jones v. State, 819 So.2d 558, 562(¶ 16) (Miss.Ct.App.2002) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)). We hold that the evidence was sufficient to support the verdict.
¶ 6. Testimony was presented that Anderson was seen with a gun. He began to pull the gun out of his pants either immediately after getting knocked to the floor of the In and Out Club or immediately before. At least one witness, Bevie Bingham, saw "fire" coming from the muzzle of the gun. The bullet casings were identified as likely coming from a Glock. A witness identified Anderson's gun as a Glock. While there was also testimony that at least one other person drew a gun inside the club that night, that testimony goes to the weight which the jury gives the various pieces of evidence. Obviously, by returning a verdict of guilty, the jury decided to give that testimony less weight than the testimony supporting the guilt of Anderson. We do not find that evidence of the presence of another gun would cause reasonable doubt and fair minded jurors to find Anderson not guilty.
There is a similar standard of review when we must review the weight of the evidence. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper
Baker v. State, 802 So.2d 77, 81(¶ 14) (Miss.2001) (quoting Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998)). Our finding concerning the weight of the evidence is the same as to the challenge of the sufficiency of the evidence. The jury heard evidence that Anderson was the shooter. They also heard evidence that other persons brandished guns that night. There are many factors that go into the weight a jury gives the testimony it hears during a trialthe appearance of a witness, his or her manner of speech, body language, etc. We are not in a place to judge all of these factors and can only review what is on the record. Looking at the record, we do not find sufficient reason to declare the verdict was against the weight of the evidence. Similarly, there was enough evidence presented for us to *653 say that the verdict was not the result of any bias, prejudice, or passion.

II. DID THE TRIAL COURT ERR IN ADMITTING CRIME SCENE PHOTOGRAPHS?

III. DID ANDERSON SUFFER PREJUDICE WHEN HE WAS REFERRED TO AS "CRAZY HORSE"?
¶ 7. Anderson asserts that it was error for the trial court to allow the jury to see photographs showing Odom's wounds. One of the photographs appears to have been taken at the crime scene, and the other appears to have been taken as part of the autopsy. These photographs, he argues, have a prejudicial effect that outweighs any probative value they may have. Again, we will reverse the trial judge's decision only when it is shown that he has abused his discretion. Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936(¶ 7) (Miss. 2002).
¶ 8. Anderson's attorney made a pre-trial motion to exclude these photos. The trial judge decided to withhold his ruling until the State offered the photos into evidence. At that time, the trial judge, outside the hearing of the jury, stated:
These are two photographs that have previously been objected to because of the prejudicial nature of the photographs, but it appears to the Court that one of the key elements of proof in this particular scenario is the angle of the projectile. And I've heard enough evidence to determine that that is, in fact, a very crucial element of the proof, and I find that the prejudicial value or prejudicial effect is far outweighed by the probative value of the photograph.
¶ 9. The trial judge made a careful decision that the photographs were needed, especially in light of expected testimony from the coroner and the medical examiner. This decision is not an abuse of the trial court's discretion. Therefore, we will not overrule the trial judge's decision to admit the photographs.
¶ 10. The defense also made a pre-trial motion to prevent Anderson being identified by his nickname, "Crazy Horse." The record makes it clear that the trial court did consider the prejudicial effect versus the probative value of this nickname. Some of the witnesses only knew Anderson as "Crazy Horse." Therefore, the court ruled that it was more probative than prejudicial. We agree. We find the identification of the shooter was more important than any prejudice that Anderson may have suffered. Admitting the name "Crazy Horse" was not an abuse of discretion.

IV. DID THE CUMULATIVE ERRORS DENY ANDERSON A FAIR TRIAL?
¶ 11. Since we have not found any errors, we find no merit in this issue.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF SIXTEEN YEARS AND CONVICTION OF THREE COUNTS OF AGGRAVATED ASSAULT AND SENTENCE OF EIGHT YEARS FOR EACH COUNT IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH ALL SENTENCES TO RUN CONSECUTIVELY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR.