¶ 17. Believing the majority to have erred in its conclusion to reverse and render, I dissent, and in so doing, I would affirm the conviction of the Marion County Circuit Court.
¶ 18. With regards to the trial court denying Anderson's motion to suppress, Anderson believes that there was no basis for any finding of probable cause for a search of his car or person. Anderson argues that since Officer Smith did not observe any violation of either a traffic or an automobile registration requirement, there was no basis for either the stop or the search. For the following reasons, I am compelled to disagree.
¶ 19. The Fourth Amendment to the United States provides that people should be free in their persons from unreasonable searches and seizures and further states:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const., amend IV.
¶ 20. To be reasonable under the Fourth Amendment, most searches must be pursuant to a warrant. However, there are six exceptions to the warrant requirement; i.e. six circumstances where a warrantless search is reasonable and therefore is valid under the Fourth Amendment.
¶ 21. One of the exceptions to the warrant requirement is the "stop and frisk." This exception provides that a police officer may in appropriate circumstances and in appropriate manner approach person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. Terry v. Ohio, 392 U.S. 1, 22-23 (1968). A police officer who had observed persons going through a series of acts, each of them perhaps innocent in itself, but which taken as a whole warranted further investigation, was discharging legitimate investigation function when he decided to approach them. Id.
¶ 22. In determining what causes suffice to authorize the police to stop a person, the totality of the circumstances, the whole picture, must be taken into account. United States v. Cortez, 449 U.S. 411, 417-18, (1981). The process of assessing all of the circumstances in determining whether there is sufficient cause to authorize the police to stop a person does not deal with "hard certainties, but with probabilities . . . and the evidence collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id.
¶ 23. After a thorough examination of the record, it is my view that the facts in evidence that support the content that the initial stop of Anderson's car was justified are astounding. When Officer Smith initially observed Anderson's vehicle, the first thing he noticed was that the car stopped an abnormal amount of time at a stop sign. Officer Smith testified that he did not notice Anderson doing anything during this time frame that would support a reason for the thirty second stop at a stop sign, such as lighting a cigarette or looking for something under the seat. There was also testimony that "there was no traffic, it was about 11:30 at night on a weekday night and there was no traffic coming on South *Page 953 
High School Avenue at all." Following this abnormally long stop at the stop sign, Officer Smith further observed Anderson driving below the speed limit and watched Anderson turn onto a road that makes just a loop around a church. After following Anderson's car and watching him go in a circle, Officer Smith then decided to stop the vehicle and even testified that he "stopped the vehicle under reasonable suspicion."
¶ 24. Each one of these incidents may seem innocent in itself, but taken as a whole, along with the facts that it was late at night on a weekday night, in a commercial area where there was testimony that nothing was open at the time in question, I feel that there was enough to create reasonable suspicion and warrant further investigation. Terry, 392 U.S. at 22-23.
¶ 25. Now, when discussing the plastic bag found on Anderson, one must discuss "plain view." The "plain view" doctrine "provides grounds for seizure of an item when an officer's access to the object has some prior justification under the Fourth Amendment," and "plain view" is perhaps better understood, therefore, not as an independent "exception" to the search warrant requirement, but simply as an extension of whatever prior justification for an officer's "access to an object" might be. Texasv. Brown, 460 U.S. 730, 738-39 (1983).
¶ 26. Under the "plain view" doctrine, the police may make a warrantless seizure when they: (1) are legitimately on the premises; (2) discover evidence, fruits or instrumentalities of crime, or contraband; (3) see such evidence in plain view; and (4) have probable cause to believe that the item is evidence, contraband, or a fruit or instrumentality of crime. Arizona v. Hick, 480 U.S. at 326-27; Coolidgev. New Hampshire, 403 U.S. at 465-67.
¶ 27. "Probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would `warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such belief be correct or more likely true than false." Texas v. Brown, 460 U.S. at 742. In others words, police may seize from a lawfully stopped automobile an opaque balloon that, based on knowledge and experience, the police have probable cause to believe contains narcotics, even though the connection with the contraband would not be obvious to the average person. Id.
¶ 28. In the case sub judice, the requirements for "plain view" are all present. As I have just discussed, I feel the officer had a legitimate purpose for stopping the vehicle. During the stop, the officer asked Anderson to step out of his vehicle while another deputy ran a NCIC check for his driving record. While standing outside of the vehicle, Officer Smith noticed what obviously was a plastic bag protruding out from Anderson's pants. Upon seeing the plastic bag, the officer moved in closer to Anderson and could see with his flashlight that there appeared to be a controlled substance in the bag. As the aforementioned case law explained, the fact that the officer shined his flashlight to illuminate something, "trenched upon no rights secured to latter by Fourth Amendment." Texas, 460 U.S. at 740-41. Since the public could have looked at Anderson's pants, there was no "search" conducted within the meaning of the Fourth Amendment. Id. Officer Smith testified at trial that when he shined his flashlight upon the plastic bag and knowing that there was something suspicious *Page 954 
about a plastic bag in a guy's pants, Officer Smith eased Anderson's pants just a little bit where the officer could see and easily identify the off-white, rock-like substance. With that said, the first three requirements of "plain view" are met.
¶ 29. Now, I must discuss whether there was probable cause to remove the bag from Anderson's pants. As the case law mentioned above stated, probable cause is a flexible, common sense standard. Following the case law set out in Texas v. Brown, I believe there was probable cause. InTexas, based on knowledge and experience, police have probable cause to seize an item if they believe it contains narcotics, based on knowledge and experience. This is true even though the connection with the contraband would not be obvious to the average person. Basically, this law tells me that even though I would not associate a plastic bag with a controlled substance, a police officer with his knowledge and experience would know that controlled substances are usually found in plastic bags. Officer Smith did have the knowledge and experience to know that kind of information. Officer Smith worked with the Pearl River Basin Narcotics Task Force as a K9 officer and was also trained in drug interdiction. He also had training regarding the recognition of controlled substances. Even at trial, Officer Smith testified that based on the training and experience he had over the last seven years, and after observing the bag that Anderson had in his pants that night, it appeared to be a controlled substance.
¶ 30. Based upon everything before me, it is my deepest belief that there were definite findings of reasonable suspicion for the search stop of Anderson's car and probable cause for a search of Anderson's person.
¶ 31. Because I feel that the trial court did not err in denying Anderson's motion to suppress, I will now address the remainder of Anderson's issues.
 I. WHETHER THE TRIAL COURT ERRED IN DENYING ANDERSON'S PROPOSED JURY INSTRUCTION D-11.
 II. WHETHER THERE WAS CREDIBLE, SUBSTANTIAL EVIDENCE IN SUPPORT OF THE JURY VERDICT.
¶ 32. As to Anderson's next issue, he believes that the trial court erred in denying his proposed jury instruction D-11. Anderson feels that this was error because the jury would otherwise not receive an instruction that dealt with "probable cause" for stopping his automobile.
¶ 33. In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. Johnson v. State, 823 So.2d 582, 584 (Miss.Ct.App. 2002). When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. Id. Additionally in Smith v. State, the Mississippi Supreme Court pointed out, as did the trial court in the present case, the difference between "reasonable suspicion" for a stop and frisk of a suspect and "probable cause" which is needed alternatively for an arrest. Smith v. State, 386 So.2d 1117, 1119 (Miss. 1980).
¶ 34. It is my belief that the trial court provided adequate jury instructions for applying the law to the facts in this case. The jury instructions given to the jury included instructions on the presumption of innocence, that no inference could be drawn based upon Anderson's being indicted, that the State had a burden of proving every element of the crimes charged beyond a reasonable doubt, and that the jury was the sole judge of the facts and the credibility of all testimony given at trial. The jury was informed about "reasonable *Page 955 
suspicion" which is all that is needed for stopping a vehicle, not "probable cause." With this being the case, I feel jury instruction D-11 was an inaccurate statement of the law, and the trial court provided adequate instructions for applying the law relevant to the facts in the present case. This issue is lacking in merit.
¶ 35. In Anderson's final issue, he contends that there was insufficient evidence in the record for the trial court to have denied his peremptory instruction and for the jury to have found him guilty. Anderson believes the jury's verdict was the result of prejudice against him and that there was a lack of credible evidence connecting him to any cocaine.
¶ 36. "The standard of review for a denial of a directed verdict, peremptory instruction and a J.N.O.V. are identical." Hawthorne v. State,835 So.2d 14, 21 (¶ 31) (Miss. 2003). "When reviewing a denial of a peremptory instruction or a denial of a motion for judgment notwithstanding the verdict, the standard of review requires us to consider the evidence in the light most favorable to the appellee, giving the appellee the benefit of all favorable inferences which may be reasonably drawn from the evidence." Baker v. State, 802 So.2d 77, 81 (¶ 13) (Miss. 2001). The court is required to reverse and render where the facts point overwhelmingly in favor of the appellant that reasonable men could not have found appellant guilty. Id. However, we are required to affirm where substantial evidence of such quality and weight exists to support the verdict and where reasonable and fair minded jurors may have found appellant guilty. Id. Also see Weeks v. State,823 So.2d 578, 579-80 (¶ 9) (Miss.Ct.App. 2002).
¶ 37. Contrary to Anderson's beliefs, the record contains an abundance of credible evidence to support the jury's verdict. First and foremost, Anderson was identified by not only Officer Smith but by Deputies Hayden and Hollinger, who were also present the night in question. The plastic bag containing cocaine was seen in plain view of Officer Smith and Hayden. While Anderson testified that the cocaine was not his, he admitted that it was found on his person. At trial, Anderson presented no witnesses in his behalf to substantiate any such claim of alternative possession. The cocaine found on Anderson was collected, bagged, identified and submitted for identification and was later determined to be about 1.7 grams of cocaine, by several different scientific tests.
¶ 38. Based on those facts found in the record, there was sufficient, credible evidence to support the jury's verdict.
¶ 39. Feeling strongly about the aforementioned case law and evidence, I feel the judgment of the Marion County Circuit Court should be affirmed.
THOMAS AND MYERS, JJ., JOIN THIS SEPARATE OPINION.