# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01744-COA

JAMES GREEN                                                          APPELLANT

v.

STATE OF MISSISSIPPI                                                 APPELLEE

DATE OF JUDGMENT:           10/21/2019
TRIAL JUDGE:                HON. ALBERT B. SMITH III
COURT FROM WHICH APPEALED:  BOLIVAR COUNTY CIRCUIT COURT,
                            FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                            BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: ZAKIA HELEN ANNYCE BUTLER
DISTRICT ATTORNEY:          BRENDA FAY MITCHELL
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED - 03/09/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     A defendant was indicted and tried for aggravated assault with a firearm enhancement

after he shot a victim three times.  Following a guilty verdict, a trial court sentenced him to

a term of sixteen years in custody, with five years suspended and eleven years to serve.  The

court tacked on an additional five years to the defendant's original sentence because of the

firearm enhancement, making his total length of service sixteen years.

¶2.     On appeal, the appellant claims his "separate" sentence for the firearm enhancement

constitutes double jeopardy.  He further argues the verdict was against the overwhelming

weight of the evidence. Finding no error, we affirm.

**FACTS**

¶3. In May 2017, fifty-eight-year-old Carmichael Warren barely survived three gunshot wounds after James Green, a man nearly thirty years his junior, shot him in front of a night club. At Green's aggravated-assault trial, he and the victim disputed the events leading up to the shooting.

¶4. Warren testified that about a month and a half before Green shot him, the two men were standing across the street from each other at neighboring establishments and were engaged in separate conversations. Suddenly, Green crossed the street and started teasing Warren about his laugh. Warren told Green that he would have to "get rid of [him]" to "get rid" of his laugh because he was born with his laugh. Green responded by punching Warren in his chest, which prompted a fight between them that was eventually broken up by a bystander. According to Warren, he and Green shook hands the following day and hugged one another in apology. For a while after that, they seemed to be on good terms.

¶5. One night, about a month and a half later, Warren and Green happened to be at the same night club. Warren delivered a few meals he had prepared to some patrons inside the club. While returning to his truck to retrieve change for money, Warren heard Green ask some women who were accompanying Warren, "Y'all with that old . . . y'all with him[?]" Warren responded, "They with me. They with good people." According to Warren, without another word Green "tiptoed" behind Warren and shot him. The blow from the gun grazed the side of Warren's face and caused him to fall backward. As he lay on the ground, Green

2

stood over him and shot him two times in the chest area. Warren testified he pretended to "play dead" so Green would stop shooting him. Once Green finally left the scene, Warren's son, who was also present at the club, rushed to his father to take him to get medical treatment, but the police interceded and escorted him to the hospital. Warren testified that he was not carrying a weapon that night.

¶6. On the other hand, Green testified that several weeks before he shot Warren, Warren had "[come] down and got in [his] face . . . talking." After Green told him to move, Warren "flew into [him]." Green testified that once a bystander stopped the two from fighting, Warren declared he would kill Green. Despite the fleeting altercation, the two eventually made up after Warren apologized to Green.

¶7. Green further testified that on the night of the shooting, he witnessed Warren fighting someone else on the inside of the club the two were patronizing. Green claimed he saw a gun in Warren's back pocket and witnessed him pointing at the person as if he were about to shoot him.

¶8. Green claimed that after Warren had been escorted outside, and while in a fit of rage, he challenged a few onlookers and asked them why they were staring at him. Although none of them responded, Green testified Warren turned to him and shouted, "What you say, [Green?]" When Green replied that he did not say anything, Warren threatened to "spray" him with his firearm. At that point, Warren allegedly reached into his back pocket. Green testified that he feared for his life, pulled out his own firearm, and shot Warren before he could shoot him first. He further claimed that he shot Warren two more times because

3

Warren was still standing and attempted to draw his weapon again. After he shot Warren, Green fled the scene.

¶9. On cross-examination, Green admitted he did not inform the investigating officer assigned to the incident that he saw a gun in Warren's back pocket on the night of the shooting. He also admitted that when the officer specifically asked him whether he saw Warren with a gun on the night of the shooting, Green replied he had not seen one. The jury also learned Green did not report to the officer that he shot Warren in self-defense. Finally, the State revealed that Green had told the investigating officer that Warren "went down" after the first shot, as opposed to the second shot as he claimed on the witness stand. When the State confronted Green with each of these inconsistencies, he insisted he reported to the officer incorrectly because he was "shaken up" by the night's events and further claimed he was telling the truth on the witness stand.

¶10. Aside from the investigating officer who testified about Warren's injuries, no one else except Warren and Green testified at the trial.[1] Following deliberations, the jury found Green guilty of aggravated assault with a firearm enhancement. The trial court sentenced him to serve sixteen years in custody, with five years suspended, and eleven years to serve. The court also added five years of service to the man's aggravated assault sentence pursuant to the firearm enhancement statute.

¶11. Aggrieved, Green appeals. He asserts two assignments of error: (1) that his "separate sentences" for aggravated assault and the firearm enhancement constitute double jeopardy,

---

[1] Once the investigating officer arrived at the scene of the shooting, the spectators had cleared the area. The officer interviewed two witnesses, but each declined to testify at trial.

4

and (2) that the verdict was against the overwhelming weight of the evidence. We address each issue in turn.

## STANDARD OF REVIEW

¶12.    "We apply a de novo standard of review to claims of double jeopardy." *Boyd v. State*, 977 So. 2d 329, 334 (¶14) (Miss. 2008). Furthermore, "[o]nly in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." *Baker v. State*, 802 So. 2d 77, 81 (¶14) (Miss. 2001).

## ANALYSIS

### I.    Green's "separate sentences" for aggravated assault and the firearm enhancement do not constitute double jeopardy.

¶13.    Green argues that his "separate sentences" for aggravated assault with a deadly weapon and for using a firearm during the commission of the felony constitute double jeopardy. His chief argument centers on his belief that he "received two punishments for the same offense." Green essentially insists this is so because both the aggravated assault conviction and the firearm enhancement sentence required a finding that he used a handgun.

¶14.    Yet, as Green concedes, our courts have consistently held that "sentence-enhancement statutes under which additional terms of imprisonment are imposed do *not* result in double-jeopardy violations." *Turner v. State*, 292 So. 3d 1006, 1030 (¶79) (Miss. Ct. App. 2020) (emphasis added). As this Court has stated before, sentence enhancements do not "set out separate elements of the underlying felony." *Id*. Rather, the enhancement statute at issue "merely imposes an elevated sentence for use or display of a firearm during the commission

5

of a felony, and it does not delineate an independent substantive offence." *Id*. Therefore, double jeopardy does not apply in these cases.

¶15. Green was convicted of aggravated assault because he shot and wounded a man with a firearm. Mississippi Code Annotated section 97-37-37(1) (Rev. 2014) enhances his sentence by five years because he used a firearm. *Id*. Therefore, this issue is without merit.

## II. The verdict was not against the overwhelming weight of the evidence.

¶16. Green also argues his verdict was against the overwhelming weight of the evidence because the State failed to prove beyond a reasonable doubt that he shot Warren maliciously, rather than in self-defense. We hold the verdict was not against the overwhelming weight of the evidence.

¶17. As stated earlier, "[o]nly in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." *Baker*, 802 So. 2d at 81 (¶14). In this case, the jury was presented with an even spread of conflicting testimony between Green and the victim. In fact, the testimony was riddled with discrepancies strictly between the two opposing parties regarding whether Warren had a gun at the club, how the fight started, and who started it. Specifically, there was testimony that Green provoked Warren to fight a little over a month prior to the shooting and that he shot Warren when he was unarmed and lying on the ground. Green disputed this evidence with his own testimony, which was found to be inconsistent with his prior statement to police.

¶18. As illustrated above, the State did present testimony that Green's shooting was not

6

motivated by self-defense. In effect, Green essentially asks us to weigh Warren's word against his, but "issues of weight and credibility of witness testimony are within the sole province of the jury as fact finder." *King v. State*, 798 So. 2d 1258, 1262 (¶14) (Miss. 2001). As an appellate court, we are not permitted to sit as the "thirteenth juror" and "assume[] the role of juror on appeal." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017). Because the jury properly assessed the conflicting testimony before it and because evidence exists to prove that Green committed an aggravated assault, we find that upholding the verdict would not "sanction an unconscionable injustice." *Baker*, 802 So. 2d at 81 (¶14).

**CONCLUSION**

¶19. Because precedent has repeatedly established that elevating a defendant's sentence with a firearm enhancement statute does not constitute double jeopardy, Green's first argument is without merit. Additionally, the verdict was not against the overwhelming weight of the evidence. As such, we affirm Green's conviction and sentence.

¶20. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**