864 So.2d 948 (2003)
Carl Vester ANDERSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01173-COA.
Court of Appeals of Mississippi.
July 15, 2003.
Rehearing Denied January 27, 2004.
*949 Morris Sweatt, Columbia, for appellant.
Office of the Attorney General by: W. Glenn Watts, for appellee.
Before SOUTHWICK, P.J., LEE and GRIFFIS, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Carl Vester Anderson appeals his conviction of possession of a controlled substance. Anderson argues that the circuit court erred in failing to suppress evidence discovered in an illegal stop, search and seizure; the court failed to grant a jury instruction presenting the defendant's theory of the case; and the conviction was against the overwhelming weight of the evidence. Since we find that the search violated Anderson's constitutional rights, we address no other issue. We reverse the conviction and order that Anderson be discharged.

FACTS
¶ 2. At approximately 11:30 p.m. on October 3, 2000, Carl Anderson was stopped in his vehicle by Marion County Deputy Sheriff David Smith while driving on a main thoroughfare of Columbia, Mississippi. Deputy Smith had been following Anderson for an undisclosed distance. It was Deputy Smith's opinion that when Anderson stopped at a stop sign with the marked sheriff's car behind him, he paused for a suspiciously long time, approximately thirty seconds, before making a right turn. The new route formed a loop and returned the driver to the same main road. Deputy Smith did not follow Anderson onto this road but did observe him drive the loop without stopping or altering his speed, then turn back onto the main street and drive back in the direction from whence he came.
¶ 3. Deputy Smith stopped Anderson and asked him to step out of the vehicle. Anderson was noticeably nervous. Deputy Smith testified at trial that he could see part of a clear plastic bag protruding from the top of Anderson's pants. The deputy stepped very close to Anderson, pulled the pants away from Anderson's body, shone his flashlight down into the pants and saw *950 the contents of the bag, which appeared to be crack cocaine. Deputy Smith then removed the bag from Anderson's pants and placed him under arrest. The contents of the bag were 1.7 grams of crack cocaine.
¶ 4. The drugs were admitted into evidence at trial over objection. Anderson was convicted. He received a life sentence as an habitual offender.

DISCUSSION
¶ 5. The court found that, under the totality of the circumstances, the stop was reasonable, and the cocaine in the clear plastic bag was in plain view subject to proper seizure.
¶ 6. The Fourth Amendment to the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const., amend IV.
¶ 7. No warrant is needed for a law enforcement officer briefly to detain an individual for questioning. The officer usually may pat the outer clothing of the individual who has been stopped to determine if a weapon is possessed. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Although such stops and limited searches may be permissible under the particular circumstances at their inception, they may become violative of the Fourth Amendment by exceeding the permissible scope. Id. at 19, 88 S.Ct. 1868.
¶ 8. Another exception to a warrant requirement is usually termed "plain view." "If police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). However, if the incriminating nature of the object is not readily apparent, the plain view doctrine will not justify its seizure. Id. The plain view doctrine only forgives the lack of a warrant; it does not dispense with the requirement of probable cause. Arizona v. Hicks, 480 U.S. 321, 326-27, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1986).
¶ 9. Deputy Smith admitted at trial that the plastic bag itself did not cause him to believe that he was in danger because of something indicated by the bag. Neither could he see what was within the bag until he pulled on Anderson's pants. The dissent finds all that is needed from the fact that the plastic bag in Anderson's pants was plainly visible.
¶ 10. The officer was questioned about his actions in several different ways and at different timesin the motion to suppress and later at trial, both on direct and on cross-examination. Only during cross-examination at trial, but once is enough, was he clear about whether he could see the drugs before pulling Anderson's pants away from his body: "I didn't see the crack cocaine until after I had pulled the pants back." At other times his answers were more ambiguous, but the one clear answer is controlling. Less clear was an answer of just when he thought he saw cocaine residue, apparently higher on the bag. The officer may have testified that he could see what might have been cocaine residue when he shone the flashlight down Anderson's pants but before he pulled on the pants. Regardless, the officer admitted that he only thought that "the residue was possibly crack cocaine." Observing the powdery substance itself did not create *951 probable cause. Instead, probable cause to believe that there were drugs in the bag existed only after the search of pulling Anderson's pants away from his body. Even if the suppression hearing failed to elicit this key fact, the officer's admission at trial should have caused the post-trial motion for a judgment notwithstanding the verdict to be granted, based on the absence of probable cause to search.
¶ 11. The United States Supreme Court held that a lesser degree of suspicion than probable cause is insufficient to permit police officers' moving potentially stolen electronic equipment in order to read identifying numbers that otherwise were not visible. Hicks, 480 U.S. at 324-25, 107 S.Ct. 1149 ("distinction between `looking' at a suspicious object in plain view and `moving' it even a few inches" is critical under the Fourth Amendment). The plain view doctrine is unusable to justify physically moving objects in order to make visible what was previously concealed. The information being gained was by definition not in plain view.
¶ 12. Deputy Smith testified that when he saw "the plastic bag I got up on his body, because I was not sure exactly, you know, what it was. It could have been a plastic bag. It was definitely out of place, whatever it was was definitely out of place." Though crack cocaine may quite often be carried in plastic bags, and though having a plastic bag inside one's pants may be unusual, neither consideration creates probable cause to believe that there was cocaine. It took a look after pulling open Anderson's pants before probable cause existed. Only had the bag been hanging on the outside of the pants where the contents could be seen and identified without a search, might Smith have been justified in his actions. The use of the flashlight is not the search; it is the pulling on the pants.
¶ 13. We have already discussed the facts of the stop. The officer was suspicious because Anderson was driving a little below the speed limit, stayed too long at a stop sign, and went on a street that looped through a neighborhood without stopping. A collection of actions which, individually, are subject to innocent explanation may be sufficient to create reasonable suspicion under the totality of the circumstances. United States v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). However, mere hunches or "looking suspicious" is not sufficient to establish reasonable suspicion. Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).
¶ 14. The collection of circumstances which led the officers to stop Anderson in the first place are of questionable value to create reasonable suspicion. The officers indicated that it was the absence of illegal behavior, such as speeding, which made Anderson suspicious to them, as well as his presence in a commercial part of town late at night. Since we find that the search was illegal, we do not need to decide whether the stop was justified. The justification certainly was weak. The dissent finds the stop to be proper. We simply do not resolve the question.
¶ 15. Because the trial court should have suppressed the evidence found from the search, there is no evidence of this crime available. We reverse and order Anderson discharged.
¶ 16. THE JUDGMENT OF THE MARION COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. COSTS OF THIS APPEAL ARE ASSESSED TO MARION COUNTY.
McMILLIN, C.J., KING, P.J., LEE, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR. BRIDGES, J.,
*952 DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY THOMAS AND MYERS, JJ.
BRIDGES, J., DISSENTING:
¶ 17. Believing the majority to have erred in its conclusion to reverse and render, I dissent, and in so doing, I would affirm the conviction of the Marion County Circuit Court.
¶ 18. With regards to the trial court denying Anderson's motion to suppress, Anderson believes that there was no basis for any finding of probable cause for a search of his car or person. Anderson argues that since Officer Smith did not observe any violation of either a traffic or an automobile registration requirement, there was no basis for either the stop or the search. For the following reasons, I am compelled to disagree.
¶ 19. The Fourth Amendment to the United States provides that people should be free in their persons from unreasonable searches and seizures and further states:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const., amend IV.
¶ 20. To be reasonable under the Fourth Amendment, most searches must be pursuant to a warrant. However, there are six exceptions to the warrant requirement; i.e. six circumstances where a warrantless search is reasonable and therefore is valid under the Fourth Amendment.
¶ 21. One of the exceptions to the warrant requirement is the "stop and frisk." This exception provides that a police officer may in appropriate circumstances and in appropriate manner approach person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. Terry v. Ohio, 392 U.S. 1, 22-23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A police officer who had observed persons going through a series of acts, each of them perhaps innocent in itself, but which taken as a whole warranted further investigation, was discharging legitimate investigation function when he decided to approach them. Id.
¶ 22. In determining what causes suffice to authorize the police to stop a person, the totality of the circumstances, the whole picture, must be taken into account. United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621, (1981). The process of assessing all of the circumstances in determining whether there is sufficient cause to authorize the police to stop a person does not deal with "hard certainties, but with probabilities ... and the evidence collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id.
¶ 23. After a thorough examination of the record, it is my view that the facts in evidence that support the content that the initial stop of Anderson's car was justified are astounding. When Officer Smith initially observed Anderson's vehicle, the first thing he noticed was that the car stopped an abnormal amount of time at a stop sign. Officer Smith testified that he did not notice Anderson doing anything during this time frame that would support a reason for the thirty second stop at a stop sign, such as lighting a cigarette or looking for something under the seat. There was also testimony that "there was no traffic, it was about 11:30 at night on a weekday night and there was no traffic coming on South *953 High School Avenue at all." Following this abnormally long stop at the stop sign, Officer Smith further observed Anderson driving below the speed limit and watched Anderson turn onto a road that makes just a loop around a church. After following Anderson's car and watching him go in a circle, Officer Smith then decided to stop the vehicle and even testified that he "stopped the vehicle under reasonable suspicion."
¶ 24. Each one of these incidents may seem innocent in itself, but taken as a whole, along with the facts that it was late at night on a weekday night, in a commercial area where there was testimony that nothing was open at the time in question, I feel that there was enough to create reasonable suspicion and warrant further investigation. Terry, 392 U.S. at 22-23, 88 S.Ct. 1868.
¶ 25. Now, when discussing the plastic bag found on Anderson, one must discuss "plain view." The "plain view" doctrine "provides grounds for seizure of an item when an officer's access to the object has some prior justification under the Fourth Amendment," and "plain view" is perhaps better understood, therefore, not as an independent "exception" to the search warrant requirement, but simply as an extension of whatever prior justification for an officer's "access to an object" might be. Texas v. Brown, 460 U.S. 730, 738-39, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).
¶ 26. Under the "plain view" doctrine, the police may make a warrantless seizure when they: (1) are legitimately on the premises; (2) discover evidence, fruits or instrumentalities of crime, or contraband; (3) see such evidence in plain view; and (4) have probable cause to believe that the item is evidence, contraband, or a fruit or instrumentality of crime. Arizona v. Hicks, 480 U.S. at 326-27, 107 S.Ct. 1149; Coolidge v. New Hampshire, 403 U.S. at 465-67, 91 S.Ct. 2022.
¶ 27. "Probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would `warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such belief be correct or more likely true than false." Texas v. Brown, 460 U.S. at 742, 103 S.Ct. 1535. In others words, police may seize from a lawfully stopped automobile an opaque balloon that, based on knowledge and experience, the police have probable cause to believe contains narcotics, even though the connection with the contraband would not be obvious to the average person. Id.
¶ 28. In the case sub judice, the requirements for "plain view" are all present. As I have just discussed, I feel the officer had a legitimate purpose for stopping the vehicle. During the stop, the officer asked Anderson to step out of his vehicle while another deputy ran a NCIC check for his driving record. While standing outside of the vehicle, Officer Smith noticed what obviously was a plastic bag protruding out from Anderson's pants. Upon seeing the plastic bag, the officer moved in closer to Anderson and could see with his flashlight that there appeared to be a controlled substance in the bag. As the aforementioned case law explained, the fact that the officer shined his flashlight to illuminate something, "trenched upon no rights secured to latter by Fourth Amendment." Texas, 460 U.S. at 740-41, 103 S.Ct. 1535. Since the public could have looked at Anderson's pants, there was no "search" conducted within the meaning of the Fourth Amendment. Id. Officer Smith testified at trial that when he shined his flashlight upon the plastic bag and knowing that there was something suspicious *954 about a plastic bag in a guy's pants, Officer Smith eased Anderson's pants just a little bit where the officer could see and easily identify the off-white, rock-like substance. With that said, the first three requirements of "plain view" are met.
¶ 29. Now, I must discuss whether there was probable cause to remove the bag from Anderson's pants. As the case law mentioned above stated, probable cause is a flexible, common sense standard. Following the case law set out in Texas v. Brown, I believe there was probable cause. In Texas, based on knowledge and experience, police have probable cause to seize an item if they believe it contains narcotics, based on knowledge and experience. This is true even though the connection with the contraband would not be obvious to the average person. Basically, this law tells me that even though I would not associate a plastic bag with a controlled substance, a police officer with his knowledge and experience would know that controlled substances are usually found in plastic bags. Officer Smith did have the knowledge and experience to know that kind of information. Officer Smith worked with the Pearl River Basin Narcotics Task Force as a K9 officer and was also trained in drug interdiction. He also had training regarding the recognition of controlled substances. Even at trial, Officer Smith testified that based on the training and experience he had over the last seven years, and after observing the bag that Anderson had in his pants that night, it appeared to be a controlled substance.
¶ 30. Based upon everything before me, it is my deepest belief that there were definite findings of reasonable suspicion for the search stop of Anderson's car and probable cause for a search of Anderson's person.
¶ 31. Because I feel that the trial court did not err in denying Anderson's motion to suppress, I will now address the remainder of Anderson's issues.
I. WHETHER THE TRIAL COURT ERRED IN DENYING ANDERSON'S PROPOSED JURY INSTRUCTION D-11.
II. WHETHER THERE WAS CREDIBLE, SUBSTANTIAL EVIDENCE IN SUPPORT OF THE JURY VERDICT.
¶ 32. As to Anderson's next issue, he believes that the trial court erred in denying his proposed jury instruction D-11. Anderson feels that this was error because the jury would otherwise not receive an instruction that dealt with "probable cause" for stopping his automobile.
¶ 33. In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. Johnson v. State, 823 So.2d 582, 584 (Miss.Ct.App. 2002). When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. Id. Additionally in Smith v. State, the Mississippi Supreme Court pointed out, as did the trial court in the present case, the difference between "reasonable suspicion" for a stop and frisk of a suspect and "probable cause" which is needed alternatively for an arrest. Smith v. State, 386 So.2d 1117, 1119 (Miss.1980).
¶ 34. It is my belief that the trial court provided adequate jury instructions for applying the law to the facts in this case. The jury instructions given to the jury included instructions on the presumption of innocence, that no inference could be drawn based upon Anderson's being indicted, that the State had a burden of proving every element of the crimes charged beyond a reasonable doubt, and that the jury was the sole judge of the facts and the credibility of all testimony given at trial. The jury was informed about "reasonable *955 suspicion" which is all that is needed for stopping a vehicle, not "probable cause." With this being the case, I feel jury instruction D-11 was an inaccurate statement of the law, and the trial court provided adequate instructions for applying the law relevant to the facts in the present case. This issue is lacking in merit.
¶ 35. In Anderson's final issue, he contends that there was insufficient evidence in the record for the trial court to have denied his peremptory instruction and for the jury to have found him guilty. Anderson believes the jury's verdict was the result of prejudice against him and that there was a lack of credible evidence connecting him to any cocaine.
¶ 36. "The standard of review for a denial of a directed verdict, peremptory instruction and a J.N.O.V. are identical." Hawthorne v. State, 835 So.2d 14, 21(¶ 31) (Miss.2003). "When reviewing a denial of a peremptory instruction or a denial of a motion for judgment notwithstanding the verdict, the standard of review requires us to consider the evidence in the light most favorable to the appellee, giving the appellee the benefit of all favorable inferences which may be reasonably drawn from the evidence." Baker v. State, 802 So.2d 77, 81(¶ 13) (Miss.2001). The court is required to reverse and render where the facts point overwhelmingly in favor of the appellant that reasonable men could not have found appellant guilty. Id. However, we are required to affirm where substantial evidence of such quality and weight exists to support the verdict and where reasonable and fair minded jurors may have found appellant guilty. Id. Also see Weeks v. State, 823 So.2d 578, 579-80(¶ 9) (Miss.Ct.App.2002).
¶ 37. Contrary to Anderson's beliefs, the record contains an abundance of credible evidence to support the jury's verdict. First and foremost, Anderson was identified by not only Officer Smith but by Deputies Hayden and Hollinger, who were also present the night in question. The plastic bag containing cocaine was seen in plain view of Officer Smith and Hayden. While Anderson testified that the cocaine was not his, he admitted that it was found on his person. At trial, Anderson presented no witnesses in his behalf to substantiate any such claim of alternative possession. The cocaine found on Anderson was collected, bagged, identified and submitted for identification and was later determined to be about 1.7 grams of cocaine, by several different scientific tests.
¶ 38. Based on those facts found in the record, there was sufficient, credible evidence to support the jury's verdict.
¶ 39. Feeling strongly about the aforementioned case law and evidence, I feel the judgment of the Marion County Circuit Court should be affirmed.
THOMAS AND MYERS, JJ., JOIN THIS SEPARATE OPINION.