# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-KA-00522-SCT

*ROOSEVELT WASHINGTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/30/1995 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PRO SE |
| | LESA HARRISON BAKER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  BILLY L. GORE |
| DISTRICT ATTORNEY: | DUNN LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/11/2001 |
| MOTION FOR REHEARING FILED: | 10/26/2001; denied 12/13/2001 |
| MANDATE ISSUED: | 12/20/2001 |

### BEFORE PITTMAN, C.J., COBB AND DIAZ, JJ.

### DIAZ, JUSTICE, FOR THE COURT:

¶1. In September 1994, Roosevelt Washington (Washington) was indicted in the Lincoln County Circuit Court for armed robbery and burglary of an inhabited dwelling. These charges were actually Count 3 and Count 6, respectively, of a multi-count indictment. Washington waived arraignment, and Jack Ainsworth, Washington's attorney at the time, subsequently filed numerous motions on Washington's behalf, including motions to suppress evidence, sever trials, and a motion in limine. An omnibus hearing and a suppression hearing were conducted. The motions to suppress were overruled, but the motion to sever trials was granted. On June 28, 1995, a jury trial was held on Counts 3 and 6, and the jury returned guilty verdicts on both counts.

¶2. On June 30, 1995, the trial court sentenced Washington, as a habitual offender, to a term of forty-five (45) years for armed robbery and fifteen (15) years for burglary of an inhabited dwelling in the custody of the Mississippi Department of Corrections (MDOC) to run consecutively, as well as to run consecutively with any other sentences.

¶3. Subsequently, Washington filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Ainsworth then withdrew as Washington's counsel, and Jack Price was appointed to handle the appeal. Washington later filed a petition for a writ of mandamus to overturn his conviction, which this Court granted in March 1999. Later that same month, the trial court entered an order denying the motion for jnov or new trial, but the court did grant Washington an out-of-time appeal. Around this time, Price also withdrew as counsel for Washington. Lesa Baker of the Lincoln County Public Defender's office was then

appointed as new counsel. On January 12, 2000, a notice of appeal was filed and later amended on March 14, 2000. Finally, in response to a pro se supplemental brief filed by Washington, the State was granted time to file a response to Washington's supplemental brief. Now, the case is properly before this Court on appeal, and Washington raises the following issues: (1) whether the trial court erred in failing to grant a mistrial due to State's witness testifying that when she identified Washington, she was sitting with another woman who had been robbed; (2) whether the trial court erred in denying the motion for a directed verdict or the motion for jnov; (3) whether the trial court erred in allowing testimony at trial which did not conform to the indictment without amending the indictment to conform to the evidence, when such evidence was alleged prejudicial; (4) whether Washington was denied effective assistance of counsel; (5) whether the exclusion of testimony by a defense witness is reversible error; and (6) whether Washington was tried and convicted on a "multiplicitous" and duplicitous indictment in violation of his constitutional rights.

¶4. As for the other counts of the indictment, Washington was tried and convicted of burglary of a dwelling, Count 4, on January 24, 1995. The Count 4 conviction was affirmed by the Mississippi Court of Appeals on December 17, 1996. As for Count 2, Washington was found not guilty of armed robbery on January 24, 1995. Counts 1 and 5 have not been tried.

## FACTS

¶5. Washington was indicted for several separate incidents occurring in 1994. However, the present appeal deals solely with those facts that form the bases for Counts 3 and 6. The pertinent facts are set out below.

¶6. On September 9, 1994, Leo Nettles (Leo) was busy mowing the front lawn of his home on Auburn Drive in Bogue Chitto. His wife, Mildred Nettles (Mildred), was inside and did not feel well. She retired to the front bedroom where she lay down to rest. While lying down, Mildred heard the front door slam shut and assumed it was her husband. Curious why Leo would leave the lawn mower running, she called out to him. In response, a man armed with a silver pistol ran up to the bed and demanded money. The assailant threatened Mildred numerous times during the incident. Struck with fear, Mildred handed over roughly $210. After finding the backdoor nailed shut, the intruder made his escape out a side window.

¶7. During trial, Mildred positively identified Washington as the person who robbed her that September. Leo never saw anyone enter or leave the house; however, several other witnesses testified to seeing a suspicious looking man driving around the area about the same time. In addition, through the testimony of Officer Robert Berry, a written statement and an oral recorded statement, made by Washington, were introduced into evidence. The statements were essentially confessions to the crime; each giving varying detail.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL DUE TO STATE'S WITNESS TESTIFYING THAT WHEN SHE IDENTIFIED WASHINGTON, SHE WAS SITTING WITH ANOTHER WOMAN THAT HAD BEEN ROBBED.

¶8. Washington argues against nearly every aspect of Mildred's identification of him. He spends much time in his brief discussing the fact that Mildred said she remembered his face from dreams and that she could not remember whether the intruder had facial hair. Washington argues that such an identification is not

appropriate evidence for a conviction. However, the weight and sufficiency of the evidence will be dealt with under the next issue. On the other hand, Washington feels that an inadvertent statement made by Mildred, one of the State's witnesses, unfairly prejudiced the jury, violated a motion in limine, and warranted a mistrial. Washington argues that the failure of the trial judge to grant a mistrial amounts to reversible error. The specific statement that Washington takes issue with is an exchange between the State and Mildred concerning her identification of Washington:

> Q: All right. [Defense] [c]ounsel asked you if someone assisted you when you came here, did they point the defendant. Just tell us in your own words, as best you can, where were you at and just the circumstances surrounding you seeing the defendant the first time after you said he came into your house.

> A: I was sitting back here and he was over here, and when I got a good look at him, and then one time he was sitting over there, and he turned back and looked toward me, and there was no doubt in my mind that it was him.

> Q: Was there a police officer or somebody from the District Attorney's Office out there helping you, pointing toward him, showing you who he was?

> A: *No. One of the other ladies - - one lady was sitting with me that he robbed.*

(emphasis added). Washington promptly objected, and the trial judge heard arguments at the bench. Washington contends that the statement implies that Mildred received guidance in her identification. In addition, Washington argues that not only is the statement in violation of the pretrial order disallowing mention of any other crimes, it is also so prejudicial as to warrant mistrial.

¶9. However, a review of the record leads to a different conclusion. First, there is no evidence of prosecutorial misconduct or deceit, an important consideration. *Branch v. State*, 347 So. 2d 957, 959 (Miss. 1977). Also, the authority to declare a mistrial is left largely to the sound discretion of the trial judge. *Pulphus v. State*, 782 So. 2d 1220, 1223 (Miss. 2001). Here, the judge listened to arguments and took remedial measures. Specifically, the trial judge instructed the jurors to disregard the statement; then, he polled the jury to ensure that all could disregard the statement. This Court has repeatedly held that when a trial judge instructs the jury, we must assume that the panel followed the instruction. *Puckett v. State*, 737 So. 2d 322, 347 (Miss. 1999). Furthermore, "[a]bsent unusual circumstances, where objection is sustained to improper questioning or testimony, and the jury is admonished to disregard the question or testimony, we will not find error." *Wright v. State*, 540 So. 2d 1, 4 (Miss. 1989). We find no abuse of discretion. Thus, this issue is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION FOR A DIRECTED VERDICT OR THE MOTION FOR JNOV.

¶10. Through this assignment of error, Washington is essentially challenging the sufficiency and weight of the evidence that forms the basis for his conviction. When the sufficiency and weight of the evidence are being questioned, the accuracy of the jury's verdict is under attack. *May v. State*, 460 So. 2d 778, 780-82 (Miss. 1984). Both the motion for directed verdict and the motion for jnov or a new trial are predicated upon the idea that the evidence simply does not justify a verdict of guilt beyond a reasonable doubt. A fundamental principle of law is that jury verdicts will not be disturbed except under the most extreme of

situations. ***Manning v. State***, 735 So. 2d 323, 333 (Miss. 1999). Accordingly, in our review of criminal convictions, we view the evidence in a light most favorable to the verdict. ***Id.*** If after our review we decide that no reasonable person could have found the accused guilty beyond a reasonable doubt, the verdict will be set aside. ***Id.*** However, if our examination reveals that "reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb." ***Id.***

¶11. Washington raises a litany of examples where he feels the evidence to be lacking. He takes issue with Mildred's identification. Washington suggests that she may have received guidance and that her recollection was inappropriately based upon dreams. He also points out the lack of physical evidence and suggests that without any his conviction is unsubstantiated. Finally, Washington attacks the veracity and quality of his statements. Among the alleged problems with the statement, Washington contends that it is vague and against his constitutional rights because he asked for counsel. Furthermore, in his pro se brief, Washington asserts that the voice in his recorded oral statement is actually an imposter and that he never made a statement.

¶12. A review of the record not only shows ample evidence to support a conviction, it also reveals many of Washington's examples as being purely baseless. Mildred repeatedly and unquestionably identified Washington as her assailant. Furthermore, the record does not support Washington's allegations against the confessions. True, there was little or no physical evidence, but Washington's confessions, the identification of Washington by the victim, and the testimony of other witnesses were sufficient bases for a conviction. there-was still an abundance of material to base a conviction on. Per our charge, a review of the record guided by the long-accepted high standard of review does not reveal a verdict so wanting for evidence as to warrant a reversal. As such, this assignment of error is without merit.

### III. WHETHER THE TRIAL COURT ERRED IN ALLOWING TESTIMONY AT TRIAL WHICH DID NOT CONFORM TO THE INDICTMENT WITHOUT AMENDING THE INDICTMENT TO CONFORM TO THE EVIDENCE, WHEN SUCH EVIDENCE WAS ALLEGED PREJUDICIAL.

¶13. While the issue may seem complicated at first, the situation it addresses is actually quite simple. The indictment lists August 9, 1994, as the relevant date of the incident at the Nettleses' home. The trial judge also repeated this date as the time of the alleged incident. In actuality as evinced by the testimony of all of the witnesses, the incident for which Washington was being charged occurred on September 9, 1994. Furthermore, the prosecution did not amend the indictment to reflect the proper date. While this may seem insignificant, Washington asserts that he was severely prejudiced by the mix up in that he was not informed of the details of the alleged crime. Without an accurate date, Washington contends that he was not given an opportunity to accurately investigate an alibi. As such, Washington asserts that this is a fatal error in the indictment.

¶14. The State rebuts the argument by pointing out that there was never an objection to the discrepancy until now. This Court has held that a variance not objected to at trial is waived. ***Ellis v. State***, 254 So. 2d 902, 903 (Miss. 1971); ***Kellum v. State***, 213 Miss. 579, 582, 57 So. 2d 316, 318 (1952). Furthermore, the defect did not affect the merits of Washington's case effect the essence of the crime and was, therefore, amendable and not fatal. *See* Miss. Code Ann. § 99-17-13 (2000). As the State points out, to hold otherwise would be placing form over substance. Finally, Washington does not actually allege prejudice; he

merely states that the corrected date address "may" have helped his case. "May" is not good enough to warrant reversal of a conviction. Therefore, we find this issue to be without merit.

### IV. WHETHER WASHINGTON WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

¶15. Via a pro se supplemental brief, Washington alleges that none of his three attorneys provided effective assistance in his defense and appeal. Accusations of ineffective assistance of counsel are subject to the requirements set forth under *Osborn v. State*, 695 So. 2d 570, 575 (Miss. 1997), and *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984). Under both cases, this Court will not find counsel's assistance ineffective unless the accused (1) cites specific instances in which the attorney was so deficient that he essentially was not acting as counsel, and (2) shows that those errors deprived the accused of a fair trial. *Id.*

¶16. As evidence of his attorneys' deficient conduct, Washington points to a few specific instances. Namely, Washington accuses his counsel of not conducting a thorough independent investigation of the charges. He goes on to assert that his court-appointed attorney should have procured experts on handwriting analysis and voice verification to challenge the veracity of the "confessions." (Washington claims that he never gave any statement to the police). In addition, Washington takes issue with his attorney not objecting to the indictment, which will be dealt with separately as Issue VI. Washington also claims that counsel did not file an appeal on his behalf, would not call Washington and his girlfriend as witnesses, and should have objected to jury selection partly being conducted without Washington's presence. Washington claims that these examples more than illustrate ineffective assistance of counsel.

¶17. Washington's argument has two fatal flaws. First, he does not show how any of the alleged deficiencies deprived him of a fair trial, which is an essential element in the *Strickland* analysis. Thus, Washington's argument already fails. In addition, all of the alleged examples either can be easily explained or are frankly fictional. Time, money, and feasibility likely weighed against acquiring the suggested experts; plus, the allegations that the statements were fabricated are not supported by any evidence, save Washington's own word. As previously mentioned, the questions concerning the indictment will be discussed under another issue. Washington fired one attorney and specifically instructed him to not take action on this matter. His new attorney did file an appeal, so this claim is baseless. The failure to call witnesses can be chalked up to trial strategy.

¶18. Washington asserts in his supplemental brief before this Court that his trial counsel advised him it would be in Washington's best interest not to testify. Washington merely claims that he requested to testify on his own behalf. Also, There is no evidence to support this contention, and a review of Washington's argument does not reveal what the excluded testimony would have accomplished. However, at the conclusion of the State's case-in-chief, and after Washington rested his case without calling any witnesses, the trial court made no record regarding Washington's decision not to testify. This Court has previously suggested to trial judges that "in any case where a defendant does not testify, before the case is submitted to the jury, the defendant should be called before the court out of the presence of the jury, and advised of his right to testify ... A record should be made of this so that no question about defendant's waiver of his right to testify should ever arise in the future." *Culberson v. State*, 412 So. 2d 1184, 1186-87 (Miss. 1982). This issue was also considered in *Jaco v. State,* 574 So. 2d 625, 636 (Miss. 1990).

¶19. In *Jaco*, this Court acknowledged that the defendant should be allowed "an evidentiary hearing where

he presents a substantial and detailed affidavit to the effect that his attorney denied and affirmatively preventing him from testifying." *Id.* at 636. Similar to the case sub judice, the Jacos rested their case and the trial court failed to advise the Jacos of their right to testify. *Id.* at 633. However, this Court found that there was no evidence that the Jacos questioned their attorney concerning the advice not to testify and there was no dubious legal advice given to the Jacos; therefore, the Jacos were not allowed a evidentiary hearing on that point. The record in the case sub judice suggests that Washington merely followed the advice of his attorney. Washington had a record of convictions for prior felonies. If Washington had elected to take the stand, the jury would have learned about his previous convictions. Also, Washington does not allege that he was not aware of his right to testify in his own behalf. Furthermore, Washington provides no insight or argument as to how testifying on his own behalf would have given him a more favorable outcome. To be sure, a decision to testify would have been complete folly because the jury could verify the authenticity of the voice-recorded statement of Washington against his trial testimony. *See* ***Bracey v. State***, 724 So. 2d 1028, 1032 (Miss. Ct. App. 1998).

¶20. Finally, Washington's presence for the entire jury selection process was not necessary and did not cause an unfair trial. Therefore, we find this issue without merit.

### V. WHETHER THE EXCLUSION OF TESTIMONY BY A DEFENSE WITNESS IS REVERSIBLE ERROR.

¶21. Although this issue was briefly discussed above, Washington adds something for this issue. He claims that Officer Berry lied concerning the confession and the procurement of the gun. Furthermore, there is a vague allegation that the State withheld exculpatory evidence in the form of an oral statement (which one is unclear). Finally, he reiterates the argument that his girlfriend should have been allowed to testify.

¶22. A review of the record reveals that the State committed no discovery violation nor did it withhold exculpatory evidence. Again, we are left with Washington's unsupported word against the actual evidence and judgment of the trial judge and the jury. The confession and exclusion of Washington's girlfriend have already been discussed. There is nothing to indicate that the written and oral statements were given by anyone except Washington. Washington's girlfriend was never offered as a witness and cannot, therefore, be properly called "excluded." Furthermore, Washington merely claims that she would testify in a rebuttal capacity, which would not materially alter the charges, defense, or evidence. Without evidence that the outcome would have been affected, we cannot reverse.

### VI. WHETHER WASHINGTON WAS TRIED AND CONVICTED ON A "MULTIPLICITOUS" AND DUPLICITOUS INDICTMENT IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS.

¶23. Washington's final assignment of error charges that the indictment against him violates his constitutional rights. Miss. Code Ann. § 99-7-2 (2000) and Rule 7.07 of the Uniform Circuit and County Court Rules authorize multiple count indictments when the alleged crimes arise out of the same transaction or are parts of a common scheme. Washington correctly points out that his indictment was based on burglaries occurring on different days at different homes with different victims. Washington cites ***McCarty v. State***, 554 So. 2d 909 (Miss. 1989), in which a conviction for multiple burglaries was reversed because the incidents did not arise out of a single transaction and actually took place days apart.

¶24. Washington also claims that charging him with both armed robbery and burglary of an inhabited

dwelling is tantamount to double jeopardy. He asserts that the charges are essentially an attempt to punish him twice for the same conduct.

¶25. Again, Washington neglects to apply the appropriate law to the appropriate facts. While *McCarty* does not allow single convictions on multiple count indictments, Counts 3 and 6, which arose did arise out of a single transaction, were severed from the other counts and tried separately. In fact, all of the counts were separated from each other, except for those intimately connected (like Counts 3 and 6). In *McCarty*, the motion to sever was denied. *Id.* at 914. If Washington had faced a single trial on all six counts, then he may have had a viable *McCarty* argument.

¶26. As for Washington's duplicity argument, one simply need examine the elements of the two charges to see that they are independent and distinct crimes. The crime of burglary was complete when Washington broke into and entered the Nettles residence with the intent to commit some crime while inside. At the same time, the armed robbery occurred when Washington took money from Mildred with force or threat of force while armed. Each crime could have occurred without the other, and different facts support each. Therefore, we find this issue to be without merit.

## CONCLUSION

¶27. Despite Washington's litany of assignments of error, we find his arguments without merit. Any harm that the inadvertent statement by Mildred Nettles might have caused was properly addressed by the trial judge, and we do not feel compelled to second guess both him and the jury. Furthermore, the record contains ample evidence to support a conviction in the present case. The final issue his counsel raised concerning the inaccurate indictment was waived by failure to object. In any case, the error was harmless.

¶28. As for Washington's pro se issues, the bulk of his allegations are unfounded, unsupported by evidence, and legally unsound. Therefore, we affirm the conviction and sentence imposed by the Lincoln County Circuit Court.

¶29. **CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY-FIVE YEARS AND CONVICTION OF BURGLARY AND SENTENCE OF FIFTEEN YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SAID SENTENCES ARE TO RUN CONSECUTIVELY AND CONSECUTIVELY TO ANY OTHER SENTENCES PREVIOUSLY IMPOSED.**

   **PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER, COBB AND EASLEY, JJ., CONCUR.**