878 So.2d 124 (2004)
Edward Earl PURNELL, a/k/a James Arnold, a/k/a Bubba, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00644-COA.
Court of Appeals of Mississippi.
January 13, 2004.
Rehearing Denied March 30, 2004.
Certiorari Denied July 22, 2004.
*126 Thomas M. Fortner, Jackson, Lynn Watkins, attorneys for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, P.J., IRVING and GRIFFIS, JJ.
IRVING, J., for the Court.
¶ 1. Edward Earl Purnell was tried and convicted in the Circuit Court of Hinds County of attempted rape, sexual battery, auto theft, and strong arm robbery. Purnell appeals, asserting that the trial court erred in overruling his motion to suppress the photo lineup and the eyewitness in-court identifications of him. He also contends that the trial court erred in overruling his demurrer to the indictment and that the jury's verdict is against the overwhelming weight of the evidence.
¶ 2. Finding no error, we affirm on all issues.

FACTS
¶ 3. On or about June 17, 2000, a man knocked on the door of eighty-year-old CP[1] and asked to use her phone. When CP allowed the man into her house, he took her by the throat and threw her to the floor. The man demanded money and then grabbed CP, dragged her into the bedroom, and tried to have sex with her. He was unable to get an erection, and thus was unable to penetrate her vagina. He then stuck his fingers inside CP's vagina and struck her in the eye with his fist. Thereafter, he performed oral sex on CP. The man then took CP's car and other personal belongings before leaving the house.
¶ 4. CP gave the police a general description of the man who assaulted her. Gilbert Tillman, one of CP's neighbors, testified that he saw a man driving CP's car as it was leaving the scene of the crime. Another neighbor, Albert Seals, testified that he observed defendant Edward Purnell driving CP's car the day after the attack. He also stated that he had seen Purnell walking in the neighborhood the day before the attack. Three days after the incident, a police detective presented six photographs (including a photograph of Purnell) to CP, Tillman, and Seals for possible identification of the perpetrator. Each individual identified Purnell as the attacker and the man seen driving CP's car. The police later found CP's car, and its tag had been removed and replaced with a stolen one. No attempts were made to locate the owner of the stolen tag found on CP's car. A towel, cigarette butts, and fingerprints were found inside the car, but no scientific analysis was conducted on these items.
¶ 5. At trial, CP was unable to identify Purnell as her attacker, and stated that she believed the defendant present in the courtroom was not the one who attacked her. Notwithstanding, the jury returned a guilty verdict on all counts. Additional relevant facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Witness Identifications
¶ 6. Purnell contends that the trial court erred in overruling his motion to suppress *127 the identification testimony of State's witnesses CP, Tillman, and Seals. Purnell specifically asserts that the witnesses' testimonies involving their photo line-up and in-court identifications of him should have been excluded pursuant to the factors articulated in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
¶ 7. It is well-settled law that the standard of review for evaluating the admissibility of evidence at suppression hearings in pre-trial identification cases is whether substantial credible evidence supports the trial court's findings that, considering the totality of the circumstances, the in-court identification testimony was not impermissibly tainted. Ellis v. State, 667 So.2d 599, 605 (Miss.1995). Purnell directs our attention to the cases of Hughes v. State, 820 So.2d 8 (Miss.Ct.App.2002) and Neil v. Biggers which set forth several factors to be utilized by this Court in making this determination. These factors include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. Hughes, 820 So.2d at 11(¶ 8) (citing Biggers, 409 U.S. at 199, 93 S.Ct. 375). Further, convictions based on eyewitness identifications at trial following a pretrial identification by photographs will be set aside "only if the photographic procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Bankston v. State, 391 So.2d 1005, 1007 (Miss.1980) (citing Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)).
¶ 8. In the instant case, Purnell maintains that the witnesses' identifications were unreliable and/or suggestive since two of the victim's neighbors only saw the side of the perpetrator's face for three seconds. He further maintains that he was denied due process of law because the photo lineup consisted exclusively of frontal views and contained no profile views, both of which were needed for a reliable identification. In addition, Purnell argues that since CP was unable to identify him as her attacker at a pretrial hearing and at trial, testimony concerning her photo lineup identification of him should have been excluded.
¶ 9. Using Biggers' totality of the circumstance analysis, we find nothing in the record suggesting that the identification procedure was impermissibly suggestive or unreliable. Here, CP testified that Purnell was in her house about half an hour, and that since she was pretty close to him the whole time, she could see Purnell's face during the attack. As a result, she had ample time and opportunity to get a close view of the face of the man who attacked her. Although CP did not recognize Purnell as her attacker at trial, as the prosecution points out, this was simply due to age and poor eyesight. There was also testimony that Purnell's appearance had changed since the crime due to weight gain and a shaven head. Further, a detective investigating the crime testified that when shown photos for a possible identification three days after her attack, it only took CP seconds to identify Purnell as her attacker and that she was certain of the identification at that time. Likewise, the evidence shows that neighbors Tillman and Seals recognized Purnell when shown photos of him, and later made positive in-court identifications of him. Nothing in the record indicates that the witnesses were persuaded to pick Purnell out of the photographic line-up, or that the witness' identifications were suggestive or unreliable. *128 Based on the evidence presented at trial, Purnell's argument on this issue fails.

(2) Validity of the Indictment
¶ 10. Purnell next asserts as error that the indictment failed to allege an essential element of the crime of attempted rape. Specifically, Purnell argues that count one of the indictment was defective because its language did not state that Purnell "failed in his attempt" or "was prevented from" committing the act of rape.
¶ 11. The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review. Hawthorne v. State, 751 So.2d 1090, 1092(¶ 8) (Miss.Ct.App.1999). An indictment serves to alert a defendant of the nature of the charge against him. Ishee v. State, 799 So.2d 70, 76(¶ 18) (Miss.2001). Thus, if the indictment reasonably provides the accused with actual notice, it is sufficient to charge the defendant with the crime. Id (¶ 19). Further, when the charge is the attempt to commit a crime, an allegation of an overt act is mandatory in the indictment. Hawthorne, 751 So.2d at 1093(¶ 13). An attempt consists of three elements: (1) an intent to commit a particular crime, (2) a direct ineffectual act done towards its commission, and (3) a failure to consummate its commission. Ishee, 799 So.2d at 73(¶ 6).
¶ 12. The indictment stated that Purnell "did willfully, unlawfully, feloniously, and forcibly attempt to rape and ravish CP, a female fourteen years of age or above, without the consent and against the will of CP by then and there hitting her with his fists, throwing her on the bed, forcing her legs open and attempting to penetrate her vagina with his penis." In order to charge Purnell with attempted rape, the State must show he "attempted to" have forcible sexual intercourse with the victim, but either "failed to" or was "prevented from" doing so. Here, the evidence shows that Purnell possessed the requisite intent to commit the crime of rape. He tried to force CP to have sex with him by hitting her and holding her down against her will. Purnell then began to commit the crime of rape when he forced CP's legs open and attempted to penetrate her vagina with his penis. However, he failed to complete the crime because he was unable to get an erection, and consequently was unable to penetrate her vagina. As a result, we find that the record supports a conviction of attempted rape. We further find that the indictment was sufficient to put Purnell on notice that he was being charged with attempted rape, and the indictment specifically set forth the conduct which the State planned to use as evidence. For the foregoing reasons, this argument is without merit.

(3) Sufficiency and Weight of the Evidence
¶ 13. Finally, Purnell asserts that the trial court should have decided, as a matter of law, that the evidence presented by the state was insufficient to support a guilty verdict. He further asserts that the trial court erred in denying his motion for a directed verdict, peremptory instruction, and JNOV. Although Purnell indicates in the caption to this issue that the verdict was against the overwhelming weight of the evidence, the argument which he makes in support of the issue goes to the sufficiency and not the weight of the evidence. Therefore, we will consider the sufficiency and weight of the evidence as separate matters.
¶ 14. "The standard of review for a denial of a directed verdict, peremptory instruction, and a JNOV are identical." *129 Hawthorne, 835 So.2d at 21(¶ 31). A motion for a JNOV, as well as a motion for a directed verdict and request for a peremptory instruction, challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). On the issue of legal sufficiency, reversal can only occur when evidence of one or more of the elements of the charged offense is such that "reasonable and fair-minded jurors could only find the accused not guilty." Hawthorne, 835 So.2d at 21(¶ 31).
¶ 15. Ample evidence was offered by the State in support of Purnell's convictions. The victim testified that a man knocked on her door and asked to use her phone. When she allowed him into her house, he took her by the throat and threw her to the floor. The man then grabbed CP, dragged her into the bedroom, and proceeded to try to have sex with her. He was unsuccessful because he was unable to get an erection. He then stuck his fingers inside CP's vagina and struck her in the eye with his fist. Thereafter, he performed oral sex on CP. The man then took CP's car and other personal belongings before leaving the house.
¶ 16. The evidence further showed that when the police arrived, CP gave them a general description of the man who assaulted her. Gilbert Tillman, one of CP's neighbors, testified that he saw a man driving CP's car as it was leaving the scene of the crime. Another neighbor, Albert Seals, testified that on the day before the attack, he observed Purnell walking in the neighborhood and saw Purnell driving CP's car the day after the attack. Three days after the incident, CP, Tillman, and Seals identified Purnell as the attacker. Further, both Tillman and Seals identified Purnell as the man seen driving CP's car and made positive in-court identifications of Purnell.
¶ 17. We find that substantial evidence exists in the record to support Purnell's conviction. Accepting the evidence in the light most favorable to the state, the jury was justified in finding Purnell guilty. We will now address Purnell's assignment of error that the verdict was against the overwhelming weight of the evidence.
¶ 18. As distinguished from a motion for a directed verdict or a JNOV, a motion for a new trial asks to vacate the judgment on the grounds related to the weight of the evidence, not sufficiency of the evidence. Smith v. State, 802 So.2d 82, 85-86(¶ 11) (Miss.2001). Our standard of review for claims that a conviction is against the overwhelming weight of the evidence or that the trial court erred in not granting a motion for a new trial has been stated as follows:
"[This Court] must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction unconscionable injustice.
Todd v. State, 806 So.2d 1086, 1090(¶ 11)(Miss.2001).
¶ 19. Considering the evidence presented by the State in support of Purnell's conviction, and its substantial weight against Purnell, we are not persuaded that the verdict is so contrary to the overwhelming weight of the evidence that allowing it to stand would sanction an unconscionable injustice. The record indicates that the facts and inferences in the case-at-hand strongly point toward Purnell's guilt. Consequently, we find the trial court did not abuse its discretion denying Purnell's motion for a new trial.
*130 ¶ 20. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF COUNT ONE, RAPE AND SENTENCE OF TEN YEARS; COUNT TWO, SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS; COUNT THREE, AUTO THEFT AND SENTENCE OF FIVE YEARS; AND COUNT FOUR, STRONG ARM ROBBERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THE SENTENCES IN COUNTS ONE, THREE, AND FOUR TO RUN CONCURRENTLY, AND THE SENTENCE IN COUNT TWO TO RUN CONSECUTIVELY TO COUNT ONE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] The name of the victim has been changed to protect her identity.