ISHEE, J„
for the Court.
¶ 1. Claritha Brown was convicted in the Circuit Court of Bolivar County, Mississippi for burglary of a dwelling, robbery, kidnapping, and auto theft. Brown was sentenced to serve twenty years, with twelve years suspended, for burglary of a dwelling; fifteen years, with seven years suspended, for robbery; twenty years, with twelve years suspended for kidnapping; and five years for auto theft, with all sentences to be served concurrently in the custody of the Mississippi Department of Corrections, and to pay restitution in the amount of $40. Aggrieved by the judgment against her, Brown appealed. She raises the following issues for this Court’s review, which we list verbatim:
1. The trial court committed error in denying Appellant’s Motion for Directed Verdict because the prosecution failed to prove its case against the Appellant, and the verdict was against the overwhelming weight of the evidence, and the verdict evidences bias and prejudice against the Appellant and was based solely upon conjecture and speculation.
2. The trial court committed reversible error when not allowing testimony of drug activity conducted by one of the prosecuting witnesses.
FACTS
¶ 2. On the evening of March 31, 2004, Brown drove a gray car to the mobile home of Kevin McKnight and his girlfriend, Keichrese Thomas, in Cleveland, Mississippi. Brown pulled up to the property, but left without entering McKnight’s home. Later that evening, Brown returned. On her second visit to the McKnight property, Brown drove a burgundy Oldsmobile. She knocked on the door to the mobile home; McKnight opened the door and allowed her to enter. McKnight testified that after letting Brown into his home, he immediately locked the doorknob and closed the door. He then took a seat on ,the couch next to Thomas, and offered Brown a seat. Brown declined to sit down, and remained standing in the living room, facing McKnight and Thomas, with her back to the door. Thomas testified that she saw Brown’s hand on the doorknob.
¶ 3. Moments later, McKnight testified that he heard footsteps coming up the porch. As he looked out of the window to see who was coming, three armed and masked men entered his home. The intruders carried guns and wore black nylon stockings over their faces. McKnight testified that the men opened the door to his home without force, even though he was certain that he locked the door.
¶ 4. The masked men demanded money and the keys to Thomas’s Suburban, which was parked outside. As one of the men focused his attention on McKnight, hitting him on the head with his gun, Thomas attempted to ease away from the couch and move toward the back door. Thomas’s attempted escape was discovered, and one of the intruders ordered her to move away from the door. Another intruder grabbed Thomas by her hair and shoved her into the bathroom. While holding Thomas at gunpoint, the man ordered her to take off all of her clothes and to sit on the floor with her legs spread. Thomas complied with his order. Before anything could happen to her, the intruder heard a noise coming from somewhere else in the mobile home. He forced Thomas back into the living room, and ordered her to lie down on the floor next to Brown. Thomas testified that one of the men stood guard in the living room, as the other two men *286 took McKnight into the bedroom and bound him to the bed with duct tape. Thomas never saw any of the men point a gun at Brown during the ordeal.
¶ 5. The intruders eventually left with $40 and Thomas’s Suburban. According to Thomas, Brown refused to help her untie McKnight. Both McKnight and Thomas testified that Brown left immediately after the intruders.
¶ 6. After an investigation, Brown was indicted in the Circuit Court of Bolivar County for burglary of a dwelling, robbery, kidnapping, and auto theft. A trial was held on May 24, 2004; the jury returned a guilty verdict on all counts of the indictment on May 26. The trial court denied Brown’s motion for judgment notwithstanding the verdict or, in the alternative, a new trial.
ISSUES AND ANALYSIS
1. The trial court committed error in denying Brown’s Motion for Directed Verdict because the prosecution failed to prove its case against the Appellant, and the verdict was against the overwhelming weight of the evidence, and the verdict evidences bias and prejudice against the Appellant and was based solely upon conjecture and speculation.
¶ 7. Under this heading, Brown asserts that the trial court erred in not granting her motion for directed verdict, claiming that there was not sufficient credible evidence to justify submission of the case to the jury. She also asserts that the verdict was against the overwhelming weight of the evidence. Consequently, we must distinguish between our review for challenges to the legal sufficiency of the evidence, and our standard of review for challenges to the weight of the evidence.

(a) Sufficiency of the Evidence

¶ 8. A motion for directed verdict and JNOV, as well as a request for peremptory instruction, challenge the legal sufficiency of the evidence, “since each requires consideration of the evidence before the court when made.” McClain v. State, 625 So.2d 774, 778 (Miss.1993). Reversal on the issue of legal sufficiency can only occur when evidence of one or more of the elements of the charged offense is such that “reasonable and fair-minded jurors could only find the accused not guilty.” Purnell v. State, 878 So.2d 124, 129 (¶ 14) (Miss.Ct.App.2004) (citing Hawthorne v. State, 835 So.2d 14, 21 (¶ 31) (Miss.2003)). However, where substantial evidence of such quality and weight exists to support the verdict, and where reasonable and fair-minded jurors may have found the appellant guilty, we must affirm the judgment of the trial court. McClendon v. State, 852 So.2d 43, 47 (¶ 11) (Miss.Ct.App.2002) (citing Baker v. State, 802 So.2d 77, 81 (¶ 13) (Miss.1995)).
¶ 9. Brown asserts that the trial court erred in declining to grant her motion for directed verdict at the close of the State’s case-in-chief, as well as her motion for JNOV. In support of her challenge to the legal sufficiency of the evidence, Brown offers McKnight’s testimony that he locked the front door, but that he did not check the door to ensure that it was locked. Brown also offers the testimony of McKnight and Thomas, that Brown was on the floor during the robbery, to argue that the State’s case was “exceedingly weak,” and that the evidence of guilt “[did] not even rise to the preponderance of the evidence.” Finally, Brown asserts that her case is an example of guilt by association, because one of the victims stated that Brown was a friend of one of the masked robbers.
*287 ¶ 10. The State’s evidence was presented through the testimony of the two victims, McKnight and Thomas, as well as Derrick Thomas, the victim’s sister; Stevie Hester, a neighbor; and Murry Roark, an investigator with the Bolivar County Sheriffs Department. McKnight testified that he locked the doorknob and shut the door after allowing Brown to enter his home. Both McKnight and Thomas testified that Brown declined to sit down, and that she stood facing them with her back to the door. According to Thomas, Brown had her hand on the doorknob before the masked men rushed through the door. Thomas also testified that she never saw any of the masked men point a gun at Brown. Finally, Thomas testified that Brown left immediately after the men, and that she refused to help her untie McKnight.
¶ 11. Regarding the testimony cited by Brown, that McKnight did not check the door after locking it, the following is an excerpt from McKnight’s exchange with defense counsel on cross-examination:
Q: All right, you locked it and then you shut the door?
A: Yes.
Q: Did you shake the door after you shut it?
A: I didn’t have to. I know how to lock my door.
Q: Sir?
A: I didn’t have to. I know how to lock my door.
Q: Well, I understand you know how to lock the door. But have you ever thought you shut a door and didn’t shut a door?
A: Well, it was closed.
Q: It was closed ... [h]ow do you know that? Did you shake the door and try it?
A: I mean, anytime you slam my door, it’s locked. It shuts.
Q: Did you shake the door and make ' sure it was locked?
A: I did not. I mean, it was locked. I didn’t have to do all that.
Q: You think it was locked.
A: I didn’t have to think. I know.
Q: How do you know it was locked, if you did not check it?
BY MS. FLINT: Your Honor, I object to asked and answered or argumentative.
BY THE COURT: You are beating a dead horse.
¶ 12. Brown’s suggests that this case is one of guilt by association and that the State’s case was “exceedingly weak.” We find that her challenge to the legal sufficiency of the evidence does not justify reversal. The State presented testimonial evidence by McKnight that the front door was locked after Brown entered the mobile home. Furthermore, the State presented testimonial evidence that Brown was never threatened at gunpoint. In sum, reasonable jurors could have concluded that Brown was guilty. This issue is without merit.

(b) Weight of the Evidence

¶ 13. “As distinguished from a motion for a directed verdict or a JNOV, a motion for a new trial asks to vacate the judgment on the grounds related to the weight of the evidence, not sufficiency of the evidence.” Purnell, 878 So.2d at 129 (¶ 18) (citing Smith v. State, 802 So.2d 82, 85-86 (¶ 11) (Miss.2001)). It is a fundamental principle of law that a jury verdict will not be disturbed except in the most extreme of situations. Washington v. State, 800 So.2d 1140, 1144 (¶ 10) (Miss.2001) (citing Manning v. State, 735 So.2d 323, 333 (¶ 10) (Miss.1999)). “Only in those cases where the verdict is so con *288 trary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.” Walker v. State, 881 So.2d 820, 831 (¶ 32) (Miss.2004) (citing Dudley v. State, 719 So.2d 180, 182 (¶ 8) (Miss.1998) (overruled on other grounds)).
¶ 14. After reviewing the evidence in support of Brown’s conviction, we cannot say that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. We find that the facts and reasonable inferences drawn from those facts strongly point toward Brown’s guilt. Therefore, this issue is without merit.
2. The trial court committed reversible error when not allowing testimony of drug activity conducted by one of the prosecuting witnesses.
¶ 15. A trial judge has great discretion in determining the relevancy and admissibility of evidence. Fisher v. State, 690 So.2d 268, 274 (Miss.1996) (citing Shearer v. State, 423 So.2d 824, 826 (Miss.1982)). The trial judge’s ruling on such matters will not be reversed, únless the judge abused this discretion so as to be prejudicial to the accused. Id. Rule 103(a) of the Mississippi Rules of Evidence states in part that “[ejrror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.”
¶ 16. Prior to the trial, the State filed a motion in limine to exclude the testimony of defense witnesses and/or co-defendants regarding alleged drug transfers between themselves and the victims. The State argued that such testimony was not relevant, and that it would confuse the jury as to the issues of the case. Furthermore, the State argued that the testimony was offered to prove conformity, that it was speculative, and that it was not an affirmative defense.
¶ 17. During direct examination, McKnight testified that when Brown entered his home he asked her “whether she came by to buy some drugs, or came by to borrow some money.” On cross-examination, Brown’s attorney asked McKnight if he had sold drugs in the past, and McKnight replied that he had not. During the hearing on the motion in limine, Brown’s attorney argued that Ricky Giles should be allowed to testify that on March 3, 2003, he witnessed Brown buy marijuana from McKnight. Brown’s attorney argued that this testimony should be allowed to impeach, or to show bias. The trial court granted the motion in limine, stating that, pursuant to Rule 608 of the Mississippi Rules of Evidence, “specific incidents of conduct may not be proved by extrinsic evidence.” The trial court also held that the testimony was not appropriate under Rule 403 of the Mississippi Rules of Evidence.
¶ 18. Rule 403 of the Mississippi Rules of Evidence states in part that relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.” Additionally, Rule 608 of the Mississippi Rules of Evidence provides that specific instances of conduct of a witness may be inquired into oh cross-examination to attack the credibility of the witness if probative of truthfulness or untruthfulness. However, the rule also provides that specific instances of conduct, which did not result in a conviction, “may not be proved by extrinsic evidence.”
¶ 19. The State may have opened the door when McKnight stated on direct that he asked Brown whether she was there to *289 borrow money or buy drugs. However, pursuant to Rule 608, Brown’s attorney could not impeach McKnight with extrinsic evidence to show prior instances of misconduct, and the trial court had great discretion in determining whether the testimony was admissible under Rule 403. Furthermore, Brown has not shown this Court that the trial court’s decision violated a substantial right. Thus, the trial court did not err in granting the motion in limine. This issue is without merit.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY OF CONVICTION OF COUNT ONE BURGLARY OF A DWELLING AND SENTENCE OF TWENTY YEARS, WITH TWELVE YEARS SUSPENDED; COUNT TWO ROBBERY AND SENTENCE OF FIFTEEN YEARS, WITH SEVEN YEARS SUSPENDED; COUNT THREE KIDNAPPING AND SENTENCE OF TWENTY YEARS, WITH TWELVE YEARS SUSPENDED; AND COUNT FOUR AUTO THEFT AND SENTENCE OF FIVE YEARS; ALL TO BE SERVED CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS; AND PAYMENT OF RESTITUTION IN THE AMOUNT OF $40 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES AND ROBERTS, JJ„ CONCUR.