ISHEE, J.,
for the Court.
¶ 1. George Johnson, also known as George Dewayne Johnson and Lil George, was convicted of conspiracy to commit murder in the Circuit Court of Coahoma County. He was sentenced as a habitual offender to serve twenty years in the custody of the Mississippi Department of Corrections without the possibility of parole. Johnson’s motion for judgment notwithstanding the verdict or, in the alternative, a new trial was denied by the circuit court. Aggrieved by the court’s decision, Johnson appeals. Finding no error, we affirm.
FACTS
¶ 2. On October 2, 2002, Andrew Hampton was shot in the buttocks; the injury was not fatal. On June 10, 2008, Lorenzo Robinson, also known as Tymoochie, was indicted for the aggravated assault of Hampton. Robinson’s trial was set for July 28, 2003. Hampton and Peppie Deon Wright, who was a witness to the shooting, were scheduled to testify against Robinson. On July 19, 2003, shortly after 2:00 a.m., Hampton was shot nine times while leaving a bar in Clarksdale, Misssissippi; the injuries were fatal. Because Hampton was killed before he could testify against Robinson, the aggravated assault case was dropped.
¶ 3. On November 30, 2004, Johnson was indicted by a Coahoma County grand jury for two counts of conspiracy to commit murder.[1] On June 13, 2005, the indictment was amended to charge Johnson as a habitual offender.[2]
¶ 4. During opening statements at Johnson’s trial, the State asserted that Johnson conspired with Robinson and Kenyon Evans to murder two witnesses: Hampton and Wright. The State further asserted that, although Johnson did not actually shoot Hampton, he was present during the shooting, with a gun, lending some sort of aid. The defense admitted that Johnson was present, and that he had a gun. Nonetheless, the defense asserted that Johnson was nothing more than a witness to a horrible crime. Both the State and *114 the defense acknowledged that the three men were members of the gang known as the Mafia Insane Vice Lords.
¶ 5. The first witness to testify on behalf of the State was Officer Norman Starks, an investigator with the Clarksdale Police Department. Officer Starks testified that the murder weapon was found at Evans’s house, and that Evans was subsequently charged with Hampton’s murder. According to Officer Starks, Johnson initially told him that he learned about the shooting in the newspaper, but later gave a statement admitting that he was involved with the shooting through his gang affiliation with Robinson. Officer Starks further testified that Michael Ingram, a Mafia Insane Vice Lords member who was also known as Spanky, stated that Robinson gave the order to kill Hampton, and Evans was the “enforcer.”
¶ 6. Ingram testified that he was a member of the Mafia Insane Vice Lords with Robinson, Evans, and Johnson. He further testified that, on July 19, 2008, before Hampton was murdered, he had a conversation with Robinson and Evans during which Robinson stated that he had offered Hampton $5,000 not to testify against him in court. According to Ingram, Evans replied to Robinson: “[d]on’t worry about it. I got him.” Ingram testified that he took Evans’s statement to mean that he planned to kill Hampton.[3]
¶ 7. Ingram testified that, later on that night, on July 19, 2003, Evans pulled up in a car with Johnson riding in the passenger seat; Ingram got in the car with the men and they went looking for Hampton’s car. Once Evans spotted Hampton’s car outside of a bar, Johnson attempted to hand Ingram a pistol. After Ingram refused to take the pistol, the three men got out of the car and walked in the direction of Hampton’s car. Ingram testified that he did not want to go, and that he believed that Johnson also did not want to go. He further testified that he stopped walking with Evans and Johnson and went to relieve himself behind a nearby building. Johnson continued to walk with Evans. After Ingram heard multiple shots being fired, he “peeped around the corner” and saw Hampton’s body lying on the ground. He testified that he ran home and cried.
¶ 8. Ingram also testified that, after the shooting, Evans called him and asked whether anybody had seen “us.” Ingram took “us” to mean Evans and Johnson.
¶ 9. Latasha Ross, who witnessed the shooting, testified that she talked with Evans for about five or ten minutes before the shooting began and, during that time, she only said hello to Johnson. Ross testified that Johnson was not speaking to anyone, but “just standing.” Ross further testified that when Hampton came out of the bar, Evans said nothing to him and just began shooting. Ross immediately fled the scene.
¶ 10. On July 12, 2005, Johnson was convicted of one count of conspiracy to commit murder, but was acquitted of the second count of conspiracy to commit murder. On July 14, 2005, the circuit court sentenced Johnson to serve twenty years, without parole, in the custody of the Mississippi Department of Corrections. The circuit court denied Johnson’s motion for JNOV or, in the alternative, a new trial. Johnson appeals, asserting the following issues for this Court’s review:
*115 I. Whether the trial court erred in denying Johnson’s motion for a new trial.
II. Whether the trial court erred in not granting Johnson’s motion for a directed verdict and motion for JNOV.
ISSUES AND ANALYSIS
I. Whether the trial court erred in denying Johnson’s motion for a new trial.
¶ 11. A motion for a new trial challenges the weight of the evidence. Beckum v. State, 917 So.2d 808, 812(¶ 10) (Miss.Ct.App.2005) (citing Carr v. State, 774 So.2d 469(¶ 15) (Miss.Ct.App.2000)). ‘When reviewing a trial court’s denial of a motion for a new trial, this Court must consider the evidence in the light most favorable to upholding the verdict.” Id. at 818(¶ 14). ‘We must keep in mind that it is the jury’s responsibility to resolve matters regarding the weight of the evidence and the credibility of witnesses.” Id. It is a fundamental principle of law that a jury verdict will not be disturbed except in the most extreme of situations. Washington v. State, 800 So.2d 1140, 1144(¶ 10) (Miss. 2001) (citing Manning v. State, 735 So.2d 323, 333(¶ 10) (Miss.1999)). “Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.” Walker v. State, 881 So.2d 820, 831(¶ 32) (Miss.2004) (citing Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998)); Dilworth v. State, 909 So.2d 731, 737 (¶¶ 20-21) (Miss.2005).
¶ 12. Johnson asserts that the State presented no credible evidence to establish that he conspired with Robinson and/or Evans to murder Hampton. Johnson maintains that, at most, the evidence suggested that he may have had some knowledge that a crime was about to be committed, but nothing more. In support of his position, Johnson cites Ross’s testimony that she saw Evans shoot Hampton, and notes that, regarding Johnson’s actions, Ross only testified that Johnson spoke to her. Johnson also notes Officer Starks’s testimony that the murder weapon was recovered from Evans’s house, not his. Based on this testimony, Johnson asserts that the overwhelming weight of the evidence was undoubtedly in his favor. We disagree.
¶ 13. After reviewing the evidence in support of Johnson’s conviction, we cannot say that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Ingram testified that he, Johnson, Evans, and Robinson were members of a gang, and that “the consequences” of refusing to participate in a mission of the gang was death. Ingram further testified that, on July 19, 2003, Evans decided to kill Hampton and attempted to recruit Ingram. Later that night, Evans and Johnson, who were both carrying guns, picked up Ingram and went looking for Hampton. Once they spotted Hampton’s car, Johnson attempted to give Ingram a pistol. Ingram testified that Johnson stayed with Evans during the shooting, even though Ingram left the two men to relieve himself. We find that the facts and reasonable inferences drawn from those facts strongly point toward Johnson’s guilt. Therefore, we decline to disturb the jury verdict in this case. This issue is without merit.
II. Whether the trial court erred in not granting Johnson’s motion for a directed verdict and motion for JNOV.
¶ 14. A motion for directed verdict or JNOV challenges the legal suffi *116 ciency of the evidence, “since each requires consideration of the evidence before the court when made.” McClain v. State, 625 So.2d 774, 778 (Miss.1993). Reversal on the issue of legal sufficiency can only occur when evidence of one or more of the elements of the charged offense are such that “reasonable and fair-minded jurors could only find the accused not guilty.” Purnell v. State, 878 So.2d 124, 129(¶ 14) (Miss.Ct. App.2004) (citing Hawthorne v. State, 835 So.2d 14, 21 (¶ 31) (Miss.2003)). However, where substantial evidence of such quality and weight exists to support the verdict, and where reasonable and fair-minded jurors may have found the appellant guilty, we must affirm the judgment of the trial court. McClendon v. State, 852 So.2d 43, 47(¶ 11) (Miss.Ct.App.2002) (citing Baker v. State, 802 So.2d 77, 81(¶13) (Miss. 1995)).
¶ 15. Under this assignment of error, Johnson reasserts his argument that the State presented no credible evidence to show that he was an active participant in Hampton’s murder. He argues that the State failed to show that he was anything other than a knowing spectator. Johnson insists that, because the State presented no evidence of any voluntary agreement with Evans or Robinson, there was no reasonable basis for finding him guilty of conspiracy.
¶ 16. Johnson’s argument fails to convince us that reasonable jurors could have only found him not guilty. The evidence shows that Johnson was carrying a pistol in the car as they drove to find Hampton’s car. Moreover, Johnson concedes in his appellate brief, that the evidence suggested that he may have had some knowledge that a crime was about to be committed. Consequently, when Johnson attempted to provide Ingram with a gun immediately after they spotted Hampton’s car he did so with the knowledge that a crime was about to be committed. Reasonable jurors could have deduced from these facts that Johnson conspired with Robinson and/or Evans to murder Hampton. This issue is without merit.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF CONSPIRACY TO COMMIT MURDER AND SENTENCE, AS A HABITUAL OFFENDER, OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS, AND CARLTON, JJ., CONCUR.

. The first count of conspiracy to commit murder named Hampton as the victim. The second count of conspiracy to commit murder named Wright as the victim. Johnson was found guilty of the former, but not guilty of the latter.

. Johnson was previously convicted of escape in the Circuit Court of Coahoma County on January 12, 2001. He was also previously convicted of possession of a firearm by a convicted felon in the U.S. District Court of the Northern District of Mississippi on April 27, 2005.

. Ingram testified that he did not want to go on the "mission” to "[k]ill Andrew Hampton” because Hampton had been a close friend since childhood. Nevertheless, Ingram also feared that he might suffer the consequences, i.e., death, if he refused to go along, as he was merely a "soldier,” or non-ranking member, in the gang.